FORDYCE *et al.* v. RAPP, *Appellant.*

Division Two, December 3, 1895.

1. **Conveyance:** GENERAL WARRANTY: INUREMENT OF TITLE. Where a conveyance is made by a deed of general warranty, any title to the land subsequently acquired by the grantor will by operation of law inure to the grantee or to his assigns.

2. ——: DEED: EXCEPTIONS. Land on which a railroad has placed a depot and side tracks will pass under a deed conveying all its property except that "not necessary for, or used or acquired for, operation of its road."

3. ——: ——: DESCRIPTION. A description in a deed conveying part of a railroad right of way and premises, *held,* sufficiently definite.

4. **Appellate Practice:** EJECTMENT: POSSESSION: HARMLESS ERROR. The refusal in ejectment to instruct on the question of appellant's possession is not reversible error where such possession is conclusively shown by the evidence.

*Appeal from Dunklin Circuit Court.*

AFFIRMED.

*Wilson Cramer* for appellant.

(1) By the sale under execution and the sheriff's deed dated December 2, 1881, the title of Jacob R. Beckwith, Cora A. Hill, George B. Clark, and the Little River Valley & Arkansas Railway Company, was cut off and passed to M. W. Lawson, and from him to George B. Clark by deed of February 11, 1882. (2) Upon the consolidation of the Little River Valley & Arkansas Railway Company with the Texas & St. Louis Railway Company in Missouri and Arkansas it transferred to the latter all of its property. The subsequent sale under the execution in favor of Law-

son destroyed whatever title the Texas & St. Louis Railway Company had acquired. (3) Even if this had not been so, the evidence introduced by the plaintiffs fails to show the transmission of title from the Texas & St. Louis Railway Company. The deed of George H. Shields, special master in chancery, to William Mortensé *et al.* styled, the "Bondholders' Committee," which was made in pursuance of the proceedings of the federal court, is inoperative to pass any title to the premises in suit, because of the following reservation contained in it: "Except, however, lands, real estate, and other property not necessary for or used or acquired for the purposes of operation of said railway." No proof was offered to show that the land in controversy did not come within this exception. (4) Possession by defendant at the time of the institution of the suit was one of the essential facts to be shown by plaintiffs, and the court should have given instruction number 4 asked by defendant. (5) The court erred in directing a verdict for plaintiffs, for the following reasons: *First.* Because the proof shows that the foundation of plaintiff's title had failed and that they had no title at the institution of this suit. *Second.* Because the evidence shows a superior outstanding title in George B. Clark. *Third.* Because there is an utter failure of proof of possession.

*W. S. C. Walker, W. H. Miller* and *Sam H. West* for respondents.

(1) The deed of Clarke to the Little River Valley & Arkansas Railway Company was a warranty deed, containing the statutory words of conveyance, and it operated to convey by inurement the after-acquired better title of Clarke, obtained in the spring of 1882,

to the successor of the original grantee, the Texas & St. Louis Railway Company, in Missouri and Arkansas. See *Norfleet v. Russell*, 64 Mo. 176. (2) The third proposition of appellant is answered by the terms of the deed of Clarke to the railway company. This "reservation" was acquired by the Little River Valley and Arkansas Railway Company for the purpose of the operation of said railway, and was conveyed for that express purpose. The evidence shows that the depot was built thereon in the winter of 1881, and that side tracks and transfer platforms were built thereon, as the uses and purposes of the company rendered such construction necessary, from 1881 until 1890, at which time the appellant went on the premises and placed his restaurant thereon. (3) The deeds of the St. Louis Southwestern Railway Company sufficiently conveyed the land sought to be conveyed. *Railway v. Maffitt*, 94 Mo. 56.

BURGESS, J.—This is an action of ejectment by plaintiffs, as receivers of the St. Louis, Arkansas & Texas Railway Company, for the possession of the following described tract of land lying in Dunklin county, to wit:

"A part of the northeast quarter of the northwest quarter of section fifteen (15), in township number twenty-two (22) north, of range number ten (10) east, and by metes and bounds, as follows: Beginning at a point on Madison street, in the city of Malden, as the same appears upon the plat of said city, on file in the recorder's office of Dunklin county, Missouri, on the west line of said street. One hundred and sixty-seven (167) feet from the center line of the track of the St. Louis, Arkansas & Texas Railroad, measured out at right angles to same, an iron rod for corner mark, thence in a southwesterly direction, parallel to center

line of said railroad, one hundred and sixty-seven (167) feet distant from same, two hundred and thirty-four (234) feet to a stake at the fence on east line of an alley; thence south along said fence thirty-nine and one half (39 1-2) feet to a corner of said fence; thence in a northerly direction, parallel to center line of said railroad, one hundred and fifty-seven (157) feet to a stake for corner; thence in a southeasterly direction, at right angles to said railroad, thirty-two and one half (32 1-2) feet to stake for corner; thence in a northeasterly direction, parallel to said railroad, fifty-two (52) feet to stake for corner, on west line of said Madison street, eighty feet (80) to place of beginning."

The petition is in the usual form, and the answer a general denial. From a judgment in favor of plaintiffs defendant appealed.

Both parties claim title under J. R. Beckwith, but as defendant, in his brief, contends that plaintiffs never acquired the title, it becomes necessary to set out the title claimed by the respective parties, plaintiffs and defendant, in full. Plaintiffs offered evidence as follows:

A deed from Jacob R. Beckwith and wife, to the Little River Valley & Arkansas Railway Company, dated August 31, 1881, and recorded September 13, 1881, reciting that grantors "grant, bargain and sell, convey and confirm," the following land: "Beginning at a point in the west line of the highway known as the Clarkton road, one hundred and fifty feet south of the north line of section fifteen, township twenty-two, range ten east; thence southwesterly, parallel with the main track of the Little River Valley & Arkansas Railway Company, of Missouri, five hundred and eighty-five feet; thence southeasterly (at right angles with said main track, one hundred and seventeen feet; thence southwesterly), parallel with, and fifty feet from,

said main track, seventy-eight feet; thence south one hundred and twenty feet; thence northeasterly, parallel with said main track, one hundred and forty-three feet; thence southeasterly, at right angles with said main track, one hundred feet; thence northeasterly, parallel with said main track, to west line of said highway, known as Clarkton road; thence north, along west line of said Clarkton road, to point of beginning, containing three and sixty-three one-hundredths acres, more or less."

A deed, in the same form, from Jacob R. Beckwith and wife to Cora A. Hill and George B. Clark, dated July 2, 1881, and recorded July 7, 1881, conveying the following land: "The undivided two thirds interest in, and to, fifteen acres of land off of the east part of the northeast quarter of the northwest quarter of section fifteen (15), in township twenty-two (22) north, of range number ten (10) east."

A deed, in the same form, from Cora A. Hill and husband, E. W. Hill, to the Little River Valley & Arkansas Railway Company, dated August 17, 1881, and recorded September 13, 1881, conveying by the same description, the land described in the deed from Jacob R. Beckwith to railway company.

A deed, in the same form, from George B. Clark and wife to the Little River Valley & Arkansas Railway Company, dated August 17, 1881, and recorded September 12, 1889, in book 13, page 546, and re-recorded July 1, 1890, in book 15, page 187, conveying by the same description, the land set out in the deed from Beckwith to the railway company.

It was admitted on the trial, that on the twenty-ninth day of November, 1881, the Little River Valley & Arkansas Railroad Company, in Missouri, was consolidated with the Texas & St. Louis Railroad Company, and conveyed to it all its property, and the two

together became the Texas & St. Louis Railroad Company, in Missouri and Arkansas.   It was also admitted that on January 12, 1894, Wm. R. Woodward was appointed as receiver of the property of the Texas & St. Louis Railroad Company, in Missouri and Arkansas, in a suit wherein the Central Trust Company, of New York, was plaintiff, and the Texas & St. Louis Railroad Company, defendant, which suit was pending in the United States circuit court for the eastern district of Missouri.   That on the thirteenth of April, 1885, Samuel W. Fordyce was appointed receiver of the property of the Texas & St. Louis Railroad Company, in Missouri and Arkansas, and another, in a suit pending in the circuit court of the United States for the eastern district of Missouri, wherein the Central Trust Company, of New York, was complainant, and said Texas & St. Louis Railroad Company, in Missouri and Arkansas, was defendant—in place of receiver Woodward, resigned.

It was further admitted by the defendant that by decree of the United States circuit court for the eastern district of Missouri, dated December 16, 1885, in a suit wherein the Central Trust Company of New York was plaintiff, and the Texas & St. Louis Railroad Company, in Missouri and Arkansas, was defendant, the property of every kind of said railroad company was ordered to be sold by George H. Shields, special master, in accordance with the course and practice of that court, and that at such sale the complainant, or any parties, or intervenors, might become purchasers.

Plaintiffs read in evidence a deed from George H. Shields, special master, to William Mortense, George Capell, Louis S. Wolf, M. Gersheimer and J. W. Paramore, styled, "The Bondholders' Committee," dated April 29, 1886, and recorded in book 12, of the land record of Dunklin county, at page 1; conveying

the following property: ''All the right, title, and equity
of redemption of the Texas & St. Louis Railway
Company in Missouri and Arkansas, or of S. W.
Fordyce, receiver, or of any of the parties to this case,
in and to, all and singular, the railroad of the Texas &
St. Louis Railway Company in Missouri and Arkansas,
extending from a point on the boundary line of the
states of Texas and Arkansas, at or near Texarkana,
running in a northwesterly direction to a point on the
Mississippi river in the state of Missouri, opposite or
nearly opposite Cairo in the state of Illinois, including,
all and singular, the lands, tenements, and heredita-
ments of the said railway company at any time owned
or acquired by it or by said receivers, and all its railroad
tracks, rights of way, main lines, branch lines, exten-
sion sidings, superstructures, depots, depot grounds,
station houses, engine houses, car houses, freight
houses, wood houses, sheds, watering places, work
shops, machine shops, bridges, viaducts, culverts,
fences, and fixtures at any time owned or acquired by
said railway company, together with all leases, leased
or hired lands, leased or hired railroads of said railway
company, and all its locomotives, tenders, cars, car-
riages, coaches, trucks, and other rolling stock, ma-
chinery, tools, weighing scales, turntables, rails, wood,
coal, oil, fuel, equipment, furniture, and materials of
every name, nature, and description at any time owned or
acquired by said railway company or purchased by said
receivers, together with all the corporate rights, privi-
leges, immunities, and franchises of said railway com-
pany, including the franchise to be a corporation, and
all the tolls, fares, freights, rents, incomes, issues, and
profits thereof and all the reversion and reversions,
remainder and remainders thereof (except, however,
lands, real estate, and other property not necessary for
or used or acquired for the purposes of operation of

said railway) including all the said mortgaged premises and property in said decrees directed to be sold, whether owned at the commencement of said suits or since acquired by the said Texas & St. Louis Railway Company in Missouri and Arkansas and by William R. Woodward, as receiver thereof, and by Samuel W. Fordyce, as receiver thereof."

Also a deed from the "Bondholders' Committee," William Mortense et al., to the St. Louis, Arkansas & Texas Railway Company, dated May 4, 1886, and recorded in Dunklin county, in book 12, page 7, conveying by the same description the same property.

It was then admitted that S. W. Fordyce was appointed receiver of the St. Louis, Arkansas & Texas Railroad Company, in Arkansas and Missouri, May 14, 1889, by the circuit court of the United States for the eastern division of the district of Missouri. That on June 24, 1889, by order of the same court, A. H. Swanson was appointed co-receiver with S. W. Fordyce of the same property.

Plaintiffs next read in evidence a decree of foreclosure and sale, made in the circuit court of the United States for the eastern division of the eastern judicial district of Missouri in a suit then pending in said court, wherein the Central Trust Company of New York and the Mercantile Trust Company were complainants and the St. Louis, Arkansas & Texas Railroad Company, in Arkansas and Missouri were defendants, styled, "In equity, number 3030 and 3121, consolidated cause." Which said decree was made at the March term, 1890, of said court, and ordered the sale of all the property of the St. Louis, Arkansas & Texas Railroad Company, in Arkansas and Missouri, to be made by David P. Dyer, special master; said special master was ordered to make said sale in accordance with the usual practice of the court, to the highest bidder at such time and

place as he should himself appoint, having given notice required by the order.

It was next admitted that the report of the sale of this property to Fitzgerald, as trustee, has been made, and further admitted that that report of sale was confirmed by the court.

Plaintiffs then read a deed from David P. Dyer, special master, and the St. Louis, Arkansas & Texas Railroad Company, to Louis Fitzgerald, styled the "purchasing trustee," dated February 5, 1891, and recorded April 29, 1891, conveying the following property: "All the right, title, and equity of redemption of the St. Louis, Arkansas and Texas Railway Company, in Arkansas and Missouri, and of S. W. Fordyce and A. H. Swanson, receivers, and of any of the parties to this cause, or of either of them, in and to, all and singular, the railroad of the St. Louis, Arkansas and Texas Railway Company, in Arkansas and Missouri, its main line beginning at Bird's Point, on the Mississippi river, in Mississippi county, Missouri, opposite or nearly opposite Cairo, Illinois, and extending southwestwardly through the counties of Mississippi, New Madrid, and Dunklin, in the state of Missouri, etc. (describing the lines of railroad and branches) the total number of miles of main line and branches aforesaid being about five hundred and eighty-two miles; also, all its lands and rights of way, depots and depot grounds, shops and shop grounds and yards; its leases, leased and hired lands, and all its rails, railways, sidings, switches, bridges, fences, turntables, water tanks and all other buildings, structures, or fixtures whatsoever; also all its locomotives, tenders, cars, carriages, coaches, trucks and other rolling stock and equipment; its machinery, tools, weighing scales, wood, coal, oil, fuel, machinery, and implements; and all other property of every character or description,

real, personal, or mixed, and forever situate together
with all the real estate, real, corporate rights, privi-
leges, immunities and franchises of the said railway
company, including the franchise to be a corporation,
and all the tolls, fares, freights, rents, income, issues
and profits of the said railroad, and all interest, claims,
and demands of every nature and description; and all
the reversion and reversions, remainder and remain-
ders thereof, including all the said mortgaged premises
and property in said decrees directed to be sold, at any
time owned or acquired by the said St. Louis, Arkansas
and Texas Railway Company, in Arkansas and Mis-
souri, or by S. W. Fordyce and A. H. Swanson, as
receivers thereof."

Also a. deed, dated February 12, 1891, signed
Samuel W. Fordyce (seal); A. H. Swanson (seal), as
receivers; grantee, Louis Fitzgerald, purchasing trustee,
reciting that it is made by order of the circuit court of
the United States, in pursuance of the decree and
report above offered in evidence; acknowledged Feb-
ruary 17, 1891; recorded April 29, 1891, in book 15,
pages 579 to 585, conveying "any and all property of
the said railroad company vested in or standing in the
name of the parties of the first part, or either of them,
as receivers of said defendant railroad, and to all prop-
erty pertaining to or appertaining to said railroad, and
property which they as said receivers have in any man-
ner acquired or may acquire during their said receiver-
ship, said railroad and property being more fully
described as follows: (including the length of miles
of road and counties through which it runs). Also,
"All its lands and rights of way, depots, depot grounds,
shops and shop grounds and yards; its leases, leased
and hired lands, and all its rails, railways, sidings,
switches, bridges, fences, turntables, water tanks and
all other buildings, structures or fixtures whatever; and

all other property of every character or description, real, personal, or mixed, wheresoever situate, with all the (title) corporate rights, privileges, immunities, and franchises of the said railroad company, and all the reversion and reversions, remainder and remainders hereof, including all the said mortgaged premises and property in said decree directed to be sold."

Also a deed from Louis Fitzgerald, purchasing trustee, to the St. Louis, Southwestern Railway Company, dated February 9, 1891, and recorded April 29, 1891, conveying the property acquired by him from David P. Dyer, special master.

Next an entry in the circuit court record at the July term, 1891, as follows: "By agreement of parties the St. Louis and Southwestern Railway Company is made party plaintiff herein and this cause is continued."

Plaintiffs then introduced evidence tending to show defendant in possession of the premises sued for at the time of the commencement of the suit, and rested.

Defendant, to sustain the issues on his part, offered evidence, as follows:

(1) Record of the plat of the town of Malden, recorded in book 3, page 275, tending to show that the line between sections 10 and 15, township 22, range 10, was the south boundary line of the town of Malden.

(2) A general judgment rendered by the circuit court of Dunklin county, in favor of Moses M. Lawson as administrator of the estate of Brumfield Beckwith, deceased, against Jacob R. Beckwith for $651.01, dated June 3, 1881.

(2a) A deed from Margaret P. Beckwith to Jacob R. Beckwith, conveying fifteen acres off of the east side of the northeast quarter of northwest quarter, section

15, township 22 north, range 10 east, dated July 1, 1881, and recorded July 7, 1881.

(3)  A sheriff's deed under execution issued upon the judgment recovered June 3, 1881, in the circuit court of Dunklin county by Moses M. Lawson, administrator, against Jacob R. Beckwith, to Moses M. Lawson, dated December 2, 1881, and recorded December 2, 1881, conveying, with other lands, the northeast quarter of northwest quarter, section 15, township 22, range 10.

(4)  A deed from M. M. Lawson to George B. Clark, dated February 11, 1882, and recorded February 11, 1882, conveying fifteen acres off of the east side northeast quarter of northwest quarter, section 15, township 22, range 10 east.

(4a)  The record of a deed from George B. Clark to John G. Rapp, dated October 6, 1884, recorded January 6, 1885, in book 7, page 542.

Objected to by counsel for plaintiffs, because the original deed has not been accounted for.  Objection sustained, and defendant excepted.

There can be no question but that the judgment in favor of M. M. Lawson, administrator, against J. R. Beckwith, which was rendered in the circuit court of Dunklin county on the third day of June, 1881, was a lien from that time on, until the expiration of three years, on all real estate which Beckwith then owned in said county, or which he thereafter acquired during the existence of such lien, and whatever interest George B. Clark may have acquired from him by deed in the land in question during that time was subject to the lien of that judgment.  It, therefore, logically follows that the sheriff's sale under execution issued upon said judgment and the deed executed by him to Lawson in pursuance thereof vested in Lawson whatever title J. R. Beckwith had in said land upon which the judgment was a lien.

Had the evidence stopped here it would have shown the legal title to have been outstanding in Lawson at the time of the commencement of the suit; but the record shows that the evidence went further and showed that Lawson by deed dated February 11, 1882, and recorded the same day, sold and conveyed to Clark fifteen acres off of the east side northeast quarter of the northwest quarter of section 15, township 20, range 10. He and his wife had before that time, to wit, August 17, 1881 (recorded September 12, 1889, and again July 1, 1890), conveyed by deed of general warranty containing the words "grant, bargain and sell, convey and confirm," to the Little River Valley & Arkansas Railway Company under which plaintiffs claim title, the same piece of land and by reason of the covenants contained in their deed whatever title or interest George B. Clark then owned, or subsequently acquired in and to said land inured to the benefit of plaintiffs, they being the grantees of the Little River Valley & Arkansas Railway Company. *Norfleet v. Russell*, 64 Mo. 176; *Bogy v. Shoab*, 13 Mo. 381. There are many other authorities to the same effect.

Rawle, in his work on Covenants for Title, section 248, says: "Where, however, the deed does contain such recital or averment, and more especially where it contains certain of the covenants for title, it has been held by a large class of cases that as a general rule any after-acquired estate will inure, by virtue of the covenants, to the party claiming under the conveyance and his heirs and assigns, *by direct operation of law*, with the same effect to all intents and purposes as if such estate had originally passed by the deed."

It makes no difference that the covenantor may not have had title at the time of the execution of the covenant. In such circumstances the subsequently acquired title inures to the benefit of the original

grantee or covenantee or his assigns to the extent of the land previously conveyed.

From these considerations it must follow as a sequence that the court did not err in refusing the second instruction asked by defendant. It did not cover the issues and facts of the case.

It is contended by defendant that the evidence did not show that plaintiffs had acquired title to the land of the Texas & St. Louis Railway Company, for that the deed from George H. Shields, special master in chancery, to Mortense *et al.* called the "Bondholders' Committee," is inoperative to pass any title to the premises in question, because of the following language contained in such deed, to wit: "Except, however, lands, real estate, and other property not necessary for or used or acquired for the purpose of operation of said railway."

The evidence showed that a depot was erected on the land in 1881; that transfer platforms had been constructed, and side tracks put down, as the business of the road might require and as it became necessary. This evidence clearly showed that the land was not within the exception.

Another contention is that the court refused to give the third instruction asked by defendant to the effect, that the deed from Shields, special master in chancery, to Mortense *et al.;* the deed from the committee for bondholders to the St. Louis, Arkansas & Texas Railroad Company; the deed from D. P. Dyer, special master in chancery, to Louis Fitzgerald; the deed of S. W. Fordyce and A. H. Swanson, receivers, to said Fitzgerald, and the deed from Fitzgerald to the St. Louis Southwestern Railway Company introduced by plaintiffs, did not convey or pass any title to the premises. This instruction was asked upon the ground

of the insufficiency and uncertainty of the description of the land intended to be conveyed.

The property is described in the deed of Dyer, special master in chancery, and in the receiver's deeds, as follows: "All and singular the railroad of the St. Louis, Arkansas and Texas Railway Company, in Arkansas and Missouri, * * * through the counties of * * * and Dunklin, in the state of Missouri * * * ; also, all its lands and rights of way, depots and depot grounds * * * together with all the real estate * * * of said railway company * * * wherever situated, * * *''

A description of land not more definite was held sufficient to pass the title in *Railroad v. Maffitt*, 94 Mo. 56. The land in question in that case was a part of a tract of one hundred feet on the south side, and one hundred and fifty feet on the north side, of the railroad track, donated to the Missouri Pacific Railway Company by the owner in platting the land adjacent to said road. The court said: "While this description does not set out specifically the lot in controversy, yet there was, we think, no error in holding it sufficient to identify the property and to pass the title."

The land in question is a part of a larger tract acquired for a right of way and depot grounds through which the railroad was constructed, on which a depot was erected and side tracks laid. It would be impracticable in conveying railroad properties, under such circumstances, to require a specific description by metes and bounds of all depot grounds, and grounds used for side tracks and stations. The description we think sufficient, under the circumstances.

The evidence was conclusive as to the possession of defendant at the time of the commencement of the suit, to wit, June 19, 1890, so that he was not preju-

diced by the refusal of an instruction submitting that question to the jury.

There being no question of innocent purchaser involved in this case, and as from what has been said whatever title George B. Clark acquired to the land in question by reason of his deed from Lawson, inured to the Little River Valley & Arkansas Railway Company, his former grantee, to whose title plaintiffs succeeded, it becomes unnecessary to pass upon the action of the court in excluding the record of the deed from Clark to the defendant, as he acquired no title by that or any subsequent deed which was read, or offered to be read, in evidence by him. The judgment was for the right party and should be affirmed. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.