## JOSIE JOHNSON et al. v. JOHN R. JOHNSON, Appellant.

### Division Two, October 27, 1902.

1. **Conveyances: COVENANTS RUNNING WITH THE LAND: EFFECT OF QUITCLAIM DEED.** Where a grantor under a deed containing covenants of seizin did not hold a valid title to the interest attempted to be conveyed at the time the deed was executed, but thereafter acquired the same, such covenant ran with the land, and the after-acquired title inured to the person holding under the first grantee, however remote from him in the line of title, without regard to the fact that an intervening deed was a quitclaim conveying only the grantor's right, title, and interest in the land.

2. ————: **DESCRIPTION: DESIGNATION OF INTEREST: SURPLUSAGE.** An heir beleiving himself entitled to an undivided three-sevenths of a tract of land conveyed the same by deed with covenants of seizin, describing it as "three undivided sevenths in and to the following described land, to wit," etc., "being the interest I hold as heir at law of P. J., deceased, and the interest acquired by purchase from two other heirs." *Held*, that the designation of the interest as that part which the grantor held as heir at law, etc., was surplusage, and could not serve to restrict the grant to less than the three-sevenths attemped to be conveyed.

3. ————: **BY HEIR: EXPECTANCY: AFTER-ACQUIRED TITLE: SUBSEQUENT PURCHASER.** Where an heir at law attempted to convey a certain interest in real estate of his ancestor, to which such heir was not entitled, by a deed containing covenants of seizin, the fact that an heir can not convey his expectancy did not preclude a subsequent purchaser in privity of title with the grantee under the warranty deed from obtaining title which descended to such heir on the subsequent death of the person holding the fee when the conveyance was made.

4. ————: **WIDOW'S HOMESTEAD: CONVEYANCE OF HEIR'S INTEREST.** On the death of the owner of a homestead the property was set off to his widow, after which J., one of the heirs, believing he had a one-seventh interest in the property, conveyed the same to the widow, who, by a subsequent deed, conveyed a one-seventh interest to such heir. Two other heirs, under the belief that they also owned a one-seventh interest in the property, conveyed their interest to J. during the widow's life, after which he conveyed, by deed containing

covenants of seizin, an undivided three-sevenths of the property to another. *Held*, that since, on the husband's death, the widow acquired the fee to the homestead, the conveyances by the heirs during her life passed no title.

5. ———: CONVEYANCE OF ESTATE NOT BELONGING TO GRANTOR: AFTER-ACQUIRED TITLE. The widow's conveyance to J. vested in him an undivided one-seventh of the property, which, together with the interest which he inherited from the widow on her death, vested in the grantee holding under J.'s warranty deed, under Revised Statutes 1899, section 4591, declaring that when a grantor undertakes to convey an estate which he does not have, but subsequently acquires, the estate so acquired shall immediately pass to the grantee as of the time of the conveyance.

6. Partition: ABSENCE OF HEIR: PRESUMPTION. Where in partition the only evidence as to a missing heir was that of his sister, who testified that more then twenty years before the trial, when he was about eighteen years of age, he left home, and nothing had been heard from him since, and that, so far as witness knew, he was unmarried, it was insufficient to raise a presumption that such . heir was unmarried, and had died intestate, and without issue.

. 7. ———: ———: NECESSARY PARTIES. Where a missing heir was entitled to an interest in real estate, and the evidence in a suit for partition did not show that he had died intestate, without issue, or unmarried, he was a necessary party to the suit under Revised Statutes 1899, section 4376, requiring that every person having an interest in lands sought to be partitioned shall be made a party.

Appeal from Newton Circuit Court.—*Hon. J. C. Lamson,* Judge.

REVERSED AND REMANDED.

*O. L. Cravens* for appellant.

(1) (a) The evidence shows that at the time of the conveyance George W. was not seized in fee of the undivided three-sevenths. He had one-seventh by the deed from his mother, and later, in 1896, on the death of his mother, he inherited one-sixth in fee as one of her heirs. These interests of his should have been vested in defendant. By the terms of the statute, under the covenants in the deed, the title subsequently acquired

by him as heir was immediately vested in his grantee with the same force as if he had in fact been seized of the three-sevenths at the time he made the deed. This, by way of estoppel running with the land. Bogy v. Shoab, 13 Mo. 365; Gibson v. Chouteau, 39 Mo. 365; Norfleet v. Russell, 64 Mo. 176; Altringer v. Capeheart, 68 Mo. 441; Irvine v. Irvine, 9 Wall. 618; Rawle on Cov. for Title, secs. 248, 252, 254; Newell on Ejectment, p. 673; Jones Real Property and Conveyancing, sec. 990. (b) In a case where there were several quit-claim deeds following the warranty, it was held the after-acquired title of the grantor in the warranty deed was carried forward through the subsequent quitclaim deeds to the remote grantee. Fordyce v. Rapp, 131 Mo. 354; Powers v. Patten, 71 Me. 583; Foote v. Clark, 102 Mo. 394. (2) (a) At the time of the quitclaim deed by George W. Johnson to his mother, he had no right, title or interest in the land. This is a conceded fact. (b) The quitclaim deed from George W. Johnson to his mother was never delivered, and even if he had a title, it never took effect as a deed. Sneathen v. Sneathen, 104 Mo. 201. (c) If it was a mere taking back of the interest the parties supposed she had acquired by a former deed, it is a transaction to which defendant is not a party and by which he is not bound. Thompson v. Wooldridge, 102 Mo. 505; Odle v. Odle, 73 Mo. 289; Lionberger v. Baker, 88 Mo. 447. (3) In the face of the express covenant in the warranty deed that he is seized of the estate of three-sevenths conveyed, no notice or knowledge of defendant could overcome the written stipulations of the deed. Whiteside v. Magruder, 75 Mo. App. 364; Blanchard v. Haseltine, 79 Mo. App. 248. (4) The law was absolute at the time of the death of Pleasant Johnson, in 1873, that his widow took the title in fee to the tract involved here. This estate would descend to and vest in her independently of any proceeding in the court to have the same appraised and set off to her as a homestead. Mills v. Mills, 141 Mo. 195.

*B. J. Morrow* and *John T. Sturgis* for respondents.

(1)   The point made that no delivery of the deed from George W. to Nancy Johnson, was shown is without merit.   No such objection was made at the time and general objection that same is "incompetent" or "not proper evidence" will not avail.   Lumber Co. v. Rogers, 145 Mo. 445; Block v. Estes, 92 Mo. 318; Chauquette v. Borada, 29 Mo. 491; Holmes v. Braidwood, 82 Mo. 610.   The deed was recorded more than twenty years before the trial and the grantor is a party to this suit and himself claims its delivery.   Recording a deed raises a strong presumption of delivery.   McReynolds v. Grubb, 150 Mo. 352; Burke v. Adams, 80 Mo. 504; Kane v. McCown, 55 Mo. 181; Lumber Co. v. Anderson, 13 Mo. App. 429.   And the evidence shows a delivery in this case.   Crowder v. Searcy, 103 Mo. 97. (2)   The case should not be reversed for failure to make Charles Edward Johnson or his heirs parties. The land has now been sold by defendant's written stipulation pending this appeal.   If the presumption of death arising from more than twenty years absence unheard of by his relatives does not vest his interest in his known heirs, yet nothing could now be done in this suit to correct the matter.   The question could only arise and be determined between him and the purchaser of the land.   Sensenderfer v. Kemp, 83 Mo. 589.   (3)   The real question at issue is whether the warranty deed of George W. Johnson, conveying as it does the three specified interests of himself and his brother and sister, referring to the source of his title, would convey and carry through the subsequent quitclaim deed from his grantee to the defendant the after-acquired title from his mother.   Our statute, section 4591, Revised Statutes 1899, is but declaratory of the common law.   It is not alone the covenants of the deed, but rather the estate sought to be conveyed, that determines whether or not it operates on after-acquired title. The covenants may be insufficient for such purpose as in ordinary quitclaim deeds.   Brawford v. Wolfe, 103

Mo. 397; Bogy v. Shoab, 13 Mo. 379. So also the estate conveyed may be so specified or limited as to take it out of the operation of the statute, and such we think it is in this case. Valle v. Clemens, 18 Mo. 490; Gibson v. Chouteau, 39 Mo. 566; Butcher v. Rogers, 60 Mo. 139; Moore v. Harris, 91 Mo. 620; Gilbert v. Jones, 86 N. C. 214; Libby v. Thornton, 64 Me. 479; Comstock v. Smith, 13 Pick. 119, 23 Am. Dec. 670; Blanchard v. Brooks, 29 Mass. (12 Pick.) 47. It has been held by many courts, though the question seems not to have arisen in this State, that an heir can not, before the death of the ancestor, convey his expected inheritance. Beard v. Griggs, 24 Ky. 22; Hall v. Chaffee, 14 N. H. 215; Hart v. Gregg, 32 Ohio St. 511. The law ought not to force on a grantor against his express intentions what it would not let him do if he had so desired. (4) The quitclaim from Jackson to defendant specifies with particularity the exact estate and title he conveys, to-wit: "Three undivided sevenths in and to the real estate of Pleasant Johnson, deceased, late of Newton county, Missouri, being the interest I hold and acquired by purchase from George W. Johnson, heir at law of said deceased." In the face of these recitals in the quitclaim to defendant, how can he claim that there passed to him the title derived from the mother which only passed to George by virtue of the statute twenty years later? Jackson v. Bradford, 4 Wend. 619. (5) Defendant claims still another seventh of the land by reason of the quitclaim deed from the mother to George W. in 1875. This deed was shown to have been a reconveyance to George W. of his interest in the whole land, which he had a year or so previously conveyed to his mother with the understanding that she would convey it back to him. It is not material now whether George's purpose in so doing was fraudulent or not, or whether he could have compelled such reconveyance. It was reconveyed, and so far as tract No. 1 is concerned, all parties acquiesce in it.

DECREE.

The decree in partition, referred to in the opinion, is as follows:

"Now on this day this cause coming on to be heard, the plaintiffs Josie Johnson, Lottie Leach, Elizabeth Kay, Lulu Felton, Bessie Setzer, A. B. Freeman, Hannah C. Johnson, George W. Johnson, and Oliver P. Johnson appear by their attorneys, John T. Sturgis, Hugh Dabbs and B. J. Morrow, and the defendant John R. Johnson appears in person and by his attorneys Cravens and Cravens and submit to the court the matters in controversy upon the pleadings and evidence adduced; and the court being fully advised in the premises doth find that the allegations of plaintiff's petition herein are true.

"The court doth further find that plaintiffs and defendant are owners of and are seized as tenants in common of the following described tract of land situate in the county of Newton and State of Missouri, to-wit:

"Tract No. 1.—The northwest quarter of the northeast quarter of section nine (9) in township twenty-six (26) and range thirty-three (33).

"That the estate from which said land descended to plaintiffs and defendant and their grantors was the estate of Pleasant Johnson, who died intestate on the . . . day of 1873, leaving Nancy C. Johnson, his widow who has since died on the . . . . day of November, 1896, and the following children as his heirs at law, to-wit, plaintiffs, Hannah C. Johnson, Oliver P. Johnson, George W. Johnson, defendant John R. Johnson and also W. Clay Johnson, Millian Johnson, and Charles E. Johnson, now deceased.

"That Charles E. Johnson died on the . . . day of eighteen hundred and eighty—, never having been married or had any children and leaving as his heirs, his brothers and sisters above mentioned, who then became entitled to his one-seventh interest in said land, thus entitling them each to one undivided sixth interest in said land.

"That afterwards, on the . . . day of 189—, said W. Clay Johnson died, leaving as his heirs the plaintiffs, Josie Johnson, Lottie Leach and Elizabeth Kay, who are each now the owner of and entitled to an undivided one-eighteenth interest in said land in fee.

"That John R. Johnson, defendant, on the 27th day of December, 1875, purchased from plaintiff, George W. Johnson an undivided seventh of said land leaving him, the said George W. Johnson, the owner of the one undivided forty-second interest in said land, which he now owns and to which he is entitled.

"That said John R. Johnson, defendant, is now the owner of and entitled to thirteen forty-seconds interest in said land.

"That Millian Johnson died on the . . . day of 188—, leaving her children, Lulu Felton and Bessie Setzer, her heirs and entitled to her interest in said land, and who have since that time sold and conveyed one-seventh of said land to plaintiff, A. B. Freeman, who is now the owner of and entitled to one-seventh of said land; and the said plaintiffs Lulu Felton and Bessie Setzer are now each the owner of and entitled to one eighty-fourth of said land.

"That plaintiffs Hannah C. Johnson and Oliver P. Johnson are each the owner of and entitled to one-sixth of said land in fee.

"The court further finds that said plaintiffs Josie Johnson, Lottie Leach, Elizabeth Kay, Lulu Felton, Bessie Setzer, Hannah C. Johnson, George W. Johnson and Oliver P. Johnson and the defendant John R. Johnson are the owners of and seized in fee, as tenants in common, of the following described land in Newton county, Missouri, to-wit:

"Tract No. 2.—Lot one (1) and part of lot two (2) of the northeast quarter, and ten acres off the north side of the northwest quarter of the southeast quarter of section two (2) in township twenty-six (26) and range thirty-three (33), said tract being described by metes and bounds as follows:

"Beginning at a limestone 40 rods south of a lime-

stone planted 40 rods west of the northeast corner of said section two (2), thence west 100 rods to a limestone, thence south 40 rods to a limestone, thence west 20 rods to a limestone, thence south 100 rods to a limestone, thence east 80 rods, thence north 20 rods, thence east 80 rods, thence north 78 rods, thence west 40 rods, thence north 40 rods to the place of beginning, containing 115 acres more or less and the courses and distances of which are more particularly described in a deed recorded in book W, at page 542 of the land records of Newton county, Missouri.

"That the estate from which said land descended to said plaintiffs and defendant and their grantors was the estate of said Nancy C. Johnson, widow of Pleasant Johnson, who died on the . . . day of November, 1896, leaving as her heirs the same persons or their descendants as hereinbefore designated as the heirs of said Pleasant Johnson, except that Charles E. Johnson, who died without being married or having children and W. Clay Johnson, the deceased ancestor of plaintiffs Josie Johnson, Lottie Leach and Elizabeth Kay, and Millian Johnson, the deceased ancestor of plaintiffs Lulu Felton and Bessie Setzer, all died before their said mother Nancy C. Johnson.

"The court further finds that the share of said last described land to which each of the plaintiffs Josie Johnson, Lottie Leach and Elizabeth Kay is entitled is one-eighteenth; that the share of said land to which each of the plaintiffs Lulu Felton and Bessie Setzer is entitled is one-twelfth; that the share of said land to which the plaintiffs Hannah C. Johnson, George W. Johnson and Oliver P. Johnson is entitled is one-sixth. That the share of said land to which the defendant John R. Johnson is entitled is one-sixth.

"Wherefore it is ordered, adjudged and decreed by the court that partition of the lands herein described both tract No. 1 and tract No. 2 be had and made among the parties plaintiff and defendant herein according to their interests herein ascertained and adjudged; and it further appearing to the court from the nature and

amount of the property sought to be divided and the number thereof that partition in kind of said estate can not be made without great prejudice to the owners thereof, the court doth therefore order said property to be sold according to law to the highest bidder for cash in hand. And the court doth hereby appoint O. P. Hawkins as commissioner herein to make said sale and to report the same to this court, and directs that before entering upon the discharge of his duties as commissioner he shall execute and file with the clerk of this court his bond payable to the State of Missouri with two or more sureties to be approved by the court in the sum of three thousand dollars, conditioned that he shall faithfully discharge his duties as commissioner and account for and pay over according to the order of the court to the parties entitled thereto all such sums of money as may come into his possession as such commissioner."

SHERWOOD, P. J.—The subject-matter of this proceeding consists of two tracts of land, numbered respectively tract No. 1 and tract No. 2, and described in the decree for partition, which will accompany this opinion.

In such decree certain findings of facts were made, and the court ordered the tracts of land sold, and the proceeds divided among the parties to this suit according to their respective interests; and from this decree defendant has appealed. But as will more fully appear later on, an arrangement was effected between the parties as to a sale of the land, non obstante the appeal.

Since this cause has reached this court, the respective interests of Bessie Setzer and Lulu Felton have been purchased by H. S. Price and by order of this court entered November 19, 1900, he has been substituted in their room and stead.

No dispute occurred between the parties litigant in the lower court as to tract No. 1, so that no necessity exists for considering any of the facts relating thereto.

In tract No. 2, defendant claimed an interest

amounting to ten twenty-firsts of the whole, but the trial court awarded him only one-sixth; and after the usual formalities below, he has brought his appeal here.

The facts are, that in 1873 both tracts of land were owned in fee by Pleasant Johnson. At his death in March of that year, there survived him his widow, Nancy Johnson, and six children; George W., Oliver P., John R., Charles Edward, Millian and Hannah C. Johnson. His other heirs were Josephine Johnson, Elizabeth Kay and Lottie Leach, the children of his deceased son, W. C. Johnson.

For some time prior to his death, Pleasant Johnson had lived on the tract of ground over which this controversy arises, and by proper proceedings in the probate court of Newton county, in 1878, the widow had it assigned to her as her homestead and thereafter occupied it as such until her death in 1896.

On the 26th day of May, 1873, George W. Johnson conveyed by quitclaim deed to his mother, Nancy Johnson, an undivided one-seventh of both parcels of ground, and this deed, some days afterwards, was put to record. On November 19, 1875, Nancy Johnson reconveyed by quitclaim deed to George W. Johnson the same interest which he had previously conveyed to her in the several tracts aforesaid, that is to say, an undivided one-seventh of all the real estate whereof Pleasant Johnson had died seized. The description in these deeds is identical; and there is no substantial difference between them except dates and the reversal of the names of grantor and grantee. On the 17th of February, 1874, the daughter, Millian, made a quitclaim deed to George W. Johnson, for an undivided one-seventh of the property over which the present dispute arises; and on December 27, 1875, John R. Johnson, defendant, made a quitclaim deed to George W. Johnson, conveying to him an undivided one-seventh of the same property. Then on February 27, 1877, George W. Johnson conveyed by warranty deed to William Jackson, three undivided sevenths of the property referred to as tract No. 2, and using in this deed the

words, "grant, bargain, sell, convey and confirm," and covenanted that he was seized of an indefeasible estate in fee in said premises, and had good right to convey the same, and that the same were free and clear of any incumbrance done or suffered by him or those under whom he claimed, and that he would warrant and defend the title against the lawful claims and demands of all persons.

The grantee in this deed, William Jackson, afterwards, on November 27, 1878, conveyed by quitclaim deed to defendant three undivided sevenths of the same land, describing it in the same words, and mentioning it as "the interest I hold and acquired by purchase from George W. Johnson, heir at law," etc.

It was shown in evidence that more than twenty years before the trial, the son, Charles Edward, left home, and that nothing had been heard of or from him in that length of time. His sister Hannah testified that when last heard from he was about eighteen years of age, and was then located about three miles from Little Rock, Arkansas, and that so far as she knew, he was unmarried. Further testifying, she stated that she and his other relatives had made frequent efforts to locate him since that time, but had been unable to learn anything of him. Neither Charles Edward nor his unknown heirs or devisees were made parties, and the trial court and the parties to this case proceeded to final judgment on the presumption that he had died intestate and unmarried and without issue, and in the order of distribution his share was divided among his brothers and sisters or their representatives in interest.

Defendant, testifying in his own behalf, stated that he had paid to Jackson, in cash, the consideration named in the quitclaim deed of November 27, 1878, from Jackson to him, and that he had purchased the interest therein described at Jackson's solicitation, and in order to prevent threatened litigation between his mother and Jackson and that he bought, and Jackson sold to him, "three shares; I was buying back my share, and also his share and another, which made the three

specified." On cross-examination he testified that the other share which he was buying, he thought was that which his sister Millian had previously conveyed to his brother George. In rebuttal, plaintiffs put upon the stand Hannah Johnson who testified, over the objection of defendant, to certain conversations between her mother and George W. Johnson about the time the quitclaim deed from her to him was executed. The tendency of these conversations, which were out of the presence of defendant, was to show that George W. Johnson was involved in a difficulty with his wife and had "made over" his interest in his father's estate to his mother, in fear of litigation with his wife, and that the quitclaim deed of November 19, 1875, from his mother to him, was merely intended as a re-conveyance of that interest, and that the two deeds were executed in pursuance of a previous agreement between George W. Johnson and his mother that she would hold his interest for him until his domestic difficulties could be settled and then reconvey to him.

The immediate source of defendant's claim to ten twenty-firsts of tract No. 2 is the quitclaim deed to him from Jackson. It is his contention that, upon the death of his father, the title to the second tract, which was the homestead, vested in his mother in fee, although it was not formally assigned to her for some years later, that by her deed of November 19, 1875, his mother, being then the owner in fee of such tract, passed to George W. Johnson an undivided one-seventh thereof; that neither the deed of Millian Johnson of February 17, 1874, nor his own deed of December 27, 1875, passed anything to George W. Johnson, because the fee simple title to the property had previously vested in his mother, Nancy Johnson; and that, therefore, the warranty deed from George W. Johnson to William Jackson, although it purported to convey three-sevenths of the tract in dispute, with appropriate covenants of seizin and warranty, in fact passed only the one-seventh which George W. Johnson had previously acquired from his mother, and that, by virtue of the covenants in the

warranty deed, the title which George W. Johnson acquired twenty years later, upon the death of his mother, inured to him, defendant, as the grantee of Jackson.

On the other hand, plaintiffs' position is that the deed of Nancy Johnson to her son George W. Johnson, did not convey any real interest, because it was merely the reconveyance to him of the interest which he supposed he had in his father's estate, and which interest he had previously, to-wit, on May 26, 1873, conveyed to her for the alleged reason that he was involved in difficulties with his wife and feared the result of the threatened litigation with her.

As hereinbefore indicated, after the cause had been heard and determined in the lower court, and after appeal taken, the parties filed this stipulation: "It is hereby agreed and stipulated by and between the parties plaintiff and defendant in the above entitled cause that the appeal taken and allowed by defendant John R. Johnson shall not operate as a supersedeas herein as to the order of sale of the land sought to be partitioned as made at this term of court, but said land shall be sold by the special commissioner in partition according to and under and by virtue of the terms of said order of sale made herein and reported to this court at the next term thereof the same as if no appeal was taken, but the proceeds of such sale shall be held and retained by said commissioner to abide the final judgment and decision in this cause either in the appellate court or this court, without payment of any costs that have accrued or may accrue, until the final disposition of the appeal and entry of such judgment as the circuit court may be required by the Supreme Court to enter." Accordingly the property was sold and the dispute of the parties is over the proper distribution of the proceeds.

The real controversy in this case is whether or not the after-acquired title of George W. Johnson inured to the benefit of the successor in interest of his grantee in the warranty deed, of February 27, 1877. That conveyance recited that for the consideration named, the

parties of the first part (George W. Johnson and his wife), do by these presents grant, bargain and sell, convey and confirm, unto the said party of the second part (William Jackson), his heirs and assigns, the following described lots, tracts or parcels of ground, lying, being and situate in the county of Newton and State of Missouri, to-wit: Three undivided sevenths in and to the following described land, being the real estate of Pleasant Johnson, deceased, late of Newton county, Missouri, being the interest I hold as heir at law of said deceased and the interest acquired by purchase of John R. Johnson and Millian Johnson, heirs at law of said deceased, which deeds of said interests are found in record book U, pages 268 and 270, land records of Newton county, to-wit: Lot one (1), northeast quarter section two, township (26) twenty-six, range thirty-three (33), and south part of north half of northeast quarter of section two (2), all in township twenty-six, range thirty-three.

The habendum clause of the deed reads thus: "To have and to hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging, or in anywise appertaining, unto the said party of the second part, and unto his heirs and assigns forever." And then follow these covenants: "The said George W. Johnson hereby covenanting that he is lawfully seized of an indefeasible estate in fee, in the premises hereby conveyed; that he has good right to convey the same; that the said premises are free and clear of any incumbrances, done or suffered by him or those under whom he claims; and that he will warrant and defend the title to the said premises, unto the said party of the second part, and unto his heirs and assigns forever, against the lawful claims and demands of all persons whomsoever."

The conveyance by which Jackson, the grantee in the above deed, transferred his interest to defendant is not set out in full in the record, but it is there stated that it is dated November 27, 1878, recites a consideration of $350, is acknowledged in due form, and conveys

"with apt words of quitclaim," the property mentioned
in the warranty deed, describing it as follows: "Three
undivided sevenths in and to the following described
land, being the real estate of Pleasant Johnson, de-
ceased, late of Newton county, Missouri, being the in-
terest I hold and acquired by purchase from George
W. Johnson, heir at law of said deceased, to-wit: Lot
one, northeast quarter of section two (2), township
twenty-six (26), of range thirty-three (33); the south
part of the north half of the northeast quarter of sec-
tion two (2), and ten acres off the north end of the
west half of the southeast quarter of section two (2),
all in township twenty-six (26) of range thirty-three
(33), containing one hundred and eighteen acres, more
or less."

If the last-mentioned conveyance was the ordi-
nary quitclaim deed, which seems the necessary infer-
ence from the record and the admissions of the par-
ties, it operated to vest in defendant all the right, title
and interest of Jackson in and to the property de-
scribed, together with all the rights, privileges and ap-
purtenances thereto pertaining. Now one of these
rights and privileges was the benefit of George W.
Johnson's covenants of seizin and warranty, and the
quitclaim deed operated to substitute defendant for
Jackson in respect of that benefit, so that it is not so
much a question of the inurement running through a
quitclaim deed, as of an assignment of the covenant.

Upon every consideration of reason and common
sense, it ought to be held that when a grantee, enjoying
the benefit of a prior covenant, undertakes to convey
all his interest in a tract of ground with all the rights
and privileges appurtenant thereto, his grantee will
succeed to the enjoyment of the covenant, and espec-
ially is that true when the covenant, by its very terms,
runs to him and his assigns as is the case here. Im-
mediately upon Jackson's quitclaim conveyance to de-
fendant, the benefit of the covenant made to Jackson
passed to his grantee, the defendant, who continues to

enjoy it until he, in turn, conveys. In other words, the covenant runs with the land.

In Allen v. Kennedy, 91 Mo. 324, we unequivocally held that a covenant of seizin is a covenant of indemnity and runs with the land, and that a cause of action for damages for the breach of such covenant is assignable; and in Langenberg v. Heer Dry Goods Co., 74 Mo. App. 12, where the deed from the plaintiff's immediate grantor contained a restriction to acts done by, through or under him, it was contended that for that reason there was no transfer to the plaintiff of the covenants of the original grantor. But the court said: "This position can not be maintained. The restriction in question merely limited the obligation of the maker of the deed containing it, and in nowise the obligation of a maker of a prior deed containing covenants without any restriction." These cases are in accord not only with the previous rulings in this State, but also with the weight of authority elsewhere. [Lockwood v. Sturdevant, 6 Conn. 373; Raymond v. Raymond, 10 Cush. 134; Smith v. Strong, 14 Pick. 128; Abbott v. Allen, 14 Johns. 254; Kincaid v. Brittain, 5 Sneed (Tenn.), 123; Garfield v. Williams, 2 Vt. 328.]

So in this case the quitclaim of his grantee could not affect the measure of George W. Johnson's liability on his covenants, and if his grantee has conveyed the property and assigned the covenants which run-with the land to defendant, then the latter is entitled to all the benefits arising from them in the same manner as George W. Johnson's grantee would have been if he had not conveyed to defendant. It is not different because the deed to the latter is a quitclaim deed. Such an instrument was sufficient to invest the latter with all the rights of his grantor.

In principle there would seem to be but little difference in this respect between a quitclaim deed and the deed of a special master under a decree of foreclosure and sale, which conveys only the right, title and interest of the defendant mortgagor. Both convey-

ances pass the same estate in extent, that is, whatever
the grantor or mortgagor has, whether it be fee simple,
life estate, or remainder; and in a case involving such
a special master's deed, we held that the right of in-
urement which a railroad company would have enjoyed,
passed to the grantee in the master's deed. [Fordyce
v. Rapp, 131 Mo. 354.] In Jenks v. Quinn, 137 N.
Y. 223, a covenant to pay an existing mortgage in a
deed of conveyance was held to run with the land, and
to pass to a subsequent grantee under an ordinary
quitclaim deed; and a similar ruling was made in Hunt
v. Amidon, 4 Hill 345; and also in Beddoe's Ex. v.
Wadsworth, 21 Wend. 120, upon the theory that a quit-
claim deed is, in effect, an assignment of the covenants.
A like conclusion was announced in Saunders v. Flan-
iken, 77 Tex. 662, and in Powers v. Patten, 71 Me. 583,
the court there saying: "They [the covenants] were
a part and parcel of his right, title and interest in the
land. He assigned and sold all his rights and inter-
ests. Such a description would, certainly, be as effec-
tual as a mere deed of release would be, and covenants
of warranty may descend, through the operation of
deeds that are mere naked releases, indefinitely from
party to party. [Wilson v. Widenham, 51 Me. 566;
Brown v. Staples, 28 Me. 497.]"

And accordingly it was ruled that the after-ac-
quired title inured to the person holding under the
first grantee, however remote from him in the line of
title, and that the succession was not broken by an in-
tervening deed which conveyed only the grantor's right,
title and interest in the land.

But plaintiffs make contention that because the gen-
eral description in the warranty deed of George W.
Johnson concluded with the words, "Being the in-
terest I hold as heir at law of said deceased and the in-
terest acquired by purchase of John R. Johnson and
Millian Johnson, heirs at law of said deceased," etc.,
the particular estate intended to be conveyed is so spec-
ified and limited as to take the deed out of the opera-
tion of the statute, under the rule established in Bogy

v. Shoab, 13 Mo. 265; Valle v. Clemens, 18 Mo. 486; Gibson v. Chouteau, 39 Mo. 536, and kindred cases. But an examination of these cases discloses that in each of them the conveyance was not of any particular interest but only the whole interest of the grantor at the time of the conveyance, whatever it may have amounted to. From the wording of the granting clause above quoted, it must be apparent that the deed purports to convey "three undivided sevenths in and to the following described land, to-wit; . . . lot one, northeast quarter, section two," etc. It is not otherwise because word "land" and word "lot" there is inserted parenthetically, the phrase "being the real estate of Pleasant Johnson, deceased, late of Newton county, Missouri, and being the interest I hold as heir at law of said deceased and the interest acquired," etc. The case is exactly as if the deed read thus: "Three undivided sevenths of lot one, northeast quarter section two," etc., "being the real estate of Pleasant Johnson, deceased, and being the interest I hold as heir at law and the interest acquired," etc. The designation of the property conveyed as a part of the real estate formerly owned by Pleasant Johnson and of the three-sevenths as the portion which the grantor acquired by descent and by purchase, is surplusage and can not serve to restrict the grant any more so than would be the case were one to convey land with general covenants of warranty, and then refer to the tract conveyed as formerly owned by John Smith. The case on which plaintiffs rely proceed upon the theory that by the particular words used it is apparent that the grantor intended to convey only that interest which he then had. It can not be so in this case because the grantor expressly conveys three-sevenths, and the words designating the source from whom he acquired the three-sevenths, do not cut down the quantity conveyed.

Suppose he had attempted to convey his own share and that formerly of his sister, and had said "two sevenths, being my share and that acquired by my brother," using the word "brother" instead of "sis-

ter," would the misuse of the words operate to cut down the fraction conveyed? Obviously not; so, the mere attempt to designate the source from which he acquired the interest conveyed, does not take the deed out of the statute. A different case might have been presented had the descriptive clause of the deed omitted mention of the fraction "three-sevenths."

A further argument against the contention of defendant: it is asserted that an heir can not, before the death of his ancestor, convey his expectancy; and that the law ought not to enforce on him against his will, what it would not let him do if he desired, but we can not yield to that argument. The cases in which a sale of an expectancy in lands of a living ancestor has been enforced, even at law, through the doctrine of estoppel springing from the covenants in a deed, are numerous. [Steele v. Frierson, 85 Tenn. 430; Bohon v. Bohon, 78 Ky. 408; Somes v. Skinker, 3 Pick. 52; Robertson v. Wilson, 38 N. H. 48; House v. McCormick, 57 N. Y. 310; Habig v. Dodge, 127 Ind. 31, followed and approved in Jerauld v. Dodge, 127 Ind. 600; Fairbanks v. Williamson, 7 Me. 96; Stover v. Eycleshimer, 46 Barb. 84; Rosenthal v. Mayhugh, 33 Ohio St. 155; Read v. Fogg, 60 Me. 479.]

Upon full consideration of the question, it must be held that defendant, as assignee of the covenants contained in the warranty deed from George W. Johnson to William Jackson, is entitled to whatever interest Johnson subsequently acquired.

We are next concerned with the inquiry whether or not George W. Johnson acquired any interest by virtue of the quitclaim deed of his mother under date of November 19, 1875. That instrument, by its plain, unvarnished terms, purports to transfer to him an undivided one-seventh of all her rights, title and interest in and to the property over the respective interests in which this controversy arose. Within its whole length and breadth there is no word tending to support the contention of plaintiffs, that it was merely the reconveyance to him of the supposed land he had theretofore

transferred to her in fear of the result of his domestic difficulties. That supposition is derived solely from the existence of his prior deed to her, and the testimony of his sister as to conversations between him and their mother regarding the deed, all of which were without the hearing of defendant. This testimony, even if properly admitted, would be insufficient for the purpose of overturning the deed. It was not corroborated, and would not have been sufficient against George W. Johnson, even if he were claiming under the deed; and there is no principle of law by which it would be any more effective against his grantee, especially when it is shown that the latter is a purchaser for value without notice.

Solemn written instruments which the parties thereto have allowed to stand unquestioned for years, can not thus be overturned, and robbed of legal efficacy and force, by the unsupported testimony of one who asserts the overhearing of a conversation between those parties, in which they expressed an intent and purpose differing from that which they have thus set down in writing. To permit this would be to embark on a course fraught with the gravest dangers, and one likely to promote all manner of fraud and chicanery, and all the more is this true where the rights of third parties have intervened.

George W. Johnson's prior quitclaim deed does not supply the lack of proof; even when considered in connection with the testimony of Hannah Johnson, and aided by the presumption of delivery, it is ineffectual. It passed no interest to his mother, for the reason he had none to convey, and the assertion of reconveyance necessarily imports a prior conveyance of something. The parties may have had the intention contended for by plaintiffs, but, in such circumstances, the result must be determined by what they really did.

Now under our law as it stood when Pleasant Johnson's death occurred in 1873, his widow immediately took the same estate in the homestead which he himself had (Gragg v. Gragg, 65 Mo. 343; Burgess v. Bowles,

99 Mo. 543; Skouten v. Wood, 57 Mo. 380; Albrecht v. Imbs, 3 Mo. App. 587); and in Vermont, whence came the statute then in force, the decisions are of the same effect (McClary v. Bixby, 36 Vt. 254; Day v. Adams, 42 Vt. 510).

That estate was a fee simple, and accordingly in March, 1873, the title vested in Nancy Johnson. The quitclaim deed of her son George added nothing, but she, being seized of the fee, passed to him an undivided seventh by her conveyance of November 19, 1875, which he in turn conveyed to Jackson, and Jackson conveyed to defendant.

Next for determination is what interest George W. Johnson acquired by inheritance from his mother; for, in the light of what has already been said, that interest would, under our statute (sec. 8835, R. S. 1889; sec. 4591, R. S. 1899) pass to defendant as assignee of the covenants in the warranty deed to Jackson. Upon her death, in 1896, the property in dispute descended to her heirs.

As before stated she had seven children including the absent Charles Edward. If before her death he died intestate and without issue, the share of George W. Johnson and his five brothers and sisters would be one-sixth each, but if he died testate, then his devisees would take his share, leaving the other children each one-seventh, and if he died intestate, leaving issue, then such issue would take his seventh. [Barnum v. Barnum, 119 Mo. 63].

While the evidence at the trial might perhaps support a finding of Charles Edward's death by reason of his long-continued absence, with no tidings from or of him, does it warrant the conclusion that he died intestate, unmarried and without issue? The only evidence on the point was the testimony of his sister, Hannah, who said that he had not been heard from in twenty years, and that at the time of his last communication he was about eighteen years old, and unmarried, "so far as she knew." Her testimony does not positively prove his celibacy; it is negative in its character, and only

amounts to a declaration of lack of positive knowledge on her part. It does not preclude either the possibility or even the probability of his having contracted marriage before the time of his last writing, or immediately or remotely afterwards. Marriages without the knowledge of relatives are by no means uncommon occurrences, nor were they ever such; and there may have been many reasons why he chose to leave them in ignorance. At best it can only be said that there is no presumption at all on the subject; although ordinarily a condition, whether it be one of insolvency, insanity of a chronic nature (State v. Lowe, 93 Mo. 547) or what not, once shown to exist, is presumed to continue until shown to have changed. But here was a young man last heard of at a time when he naturally would be unmarried, but approaching that period of life at which the greater number of men do marry, if at all, and no better reason is apparent for presuming a man unmarried until his death, merely because that was his condition in his early adolescence, than for the presumption that he spent his life in sin because, according to the creeds of some religious denominations, he was born under the cloud of original sin.

FISH, J., speaking as the organ of the Supreme Court of Georgia, in Bennett v. State, 103 Ga. loc. cit. 67, 68, said: "There is no presumption of law or of fact that a man or woman is single, nor any presumption to the contrary. There is no presumption that a man is not a member of the church, or of the masonic or any other order, simply because he was not a member in early life. Nor can it be inferred that a man is uneducated from the fact that such was his original condition. Yet there is as much reason for a presumption in such cases as there is for presuming that a man is unmarried because that must necessarily have been his first state. It may be that at a fixed age a majority of persons are single, and that at a more advanced age a majority are married, but it would be very uncertain and unreliable to presume that a particular individual of either age was single or that he was married.

Moreover, why should a man in a civilized community, who is competent to marry, be presumed not to have entered into a contract of marriage, when no presumption arises that he has not entered into any other kind of a contract?"

In Vought v. Williams, 120 N. Y. 253, a case where the validity of a title to real estate depended upon the death of a party long absent, the court refused to indulge the presumption of death intestate and without issue upon proof of absence of an heir, for twenty-four years, who, at the time of his disappearance, was about twenty-three years old, unmarried, in feeble health and of dissipated habits. The presumption as to the continuance of a condition once established and existing is applicable to a class of cases different in many respects from the case at bar. It is most frequently applied to questions of sanity, possession, insolvency and the like, hardly to such circumstances as this record presents.

If it can not be presumed that Charles Edward Johnson died intestate and without issue, then, upon the death of the mother, his brothers and sisters each took one-seventh; and the remaining seventh was outstanding in the absent one, or his heirs or devisees, whoever they may be. The court below evidently proceeded on the theory that Charles Edward Johnson died intestate and without issue prior to his mother's death, and the parties on both sides measured their respective interests under the same theory, dividing up among themselves the interest to which he or his legal representatives would have been entitled.

At the close of the case defendant moved the court to continue the case and require that Charles Edward or his unknown heirs be made parties, but the court denied the motion, defendant excepted, and assigned error on the ruling in his motion for a new trial.

Our statute (sec. 4376, R. S. 1899; sec. 7135, R. S. 1889) requires that every person having an interest be made a party, and in Dameron v. Jameson, 71 Mo. 97, we held that where the evidence disclosed that a per-

son not a party to the action had an interest in the land, no partition could be had unless that person were made a party and properly brought into court, and reversed the judgment for that reason.

Likewise, in Estes v. Nell, 108 Mo. 172, it appeared at the trial below that one of the heirs of Henry Nell was not made a party, and a decree denying partition was affirmed because of such defect of parties. It was there said: "The rule in ·partition suits, when conducted in chancery, was that unless all persons whose 'interests in the subject-matter of the suit, and the relief sought, were bound up with that of others' were brought before the court and made subject to its jurisdiction, the suit would not be entertained. 'It was, therefore, indispensable that all the co-tenants not uniting in the petition be made defendants.' [Free. on Coten. and Part., sec. 463; Barney v. Baltimore City, 6 Wall. 284; Shields v. Barrow, 17 How. (U. S.) 130.] This rule in equity is made to apply to our statutory proceedings for partition (sec. 7135) providing that 'every person having any interest in such premises, whether in possession or otherwise, shall be made a party to such petition.' [Dameron v. Jameson, 71 Mo. 97.]"

Again, in Lilly v. Menke, 126 Mo. loc. cit. 216, 217, GANTT, J., speaking for.this court in banc, said: "The reasons are many and obvious why one seeking a compulsory partition should be required to bring into court all who have an interest in the property sought to be divided. The language of Judge MILLER in Barney v. Baltimore City, 6 Wall. 285, is most appropriate here: 'If a decree is made, which is intended to bind them [the absent parties] it is manifestly unjust to do this when they are not parties to the suit, and have no opportunity to be heard. But as the decree can not bind them, the court can not for that very reason afford the relief asked, to the other parties. If, for instance, the decree should partition the land and state an account, the particular pieces of land allotted to the parties before the court would still be undivided as to *these* par-

ties, whose interest in each piece would remain as before the partition. And they could at any time apply to the proper court, and ask a re-partition of the whole tract, unaffected by the decree in this case.' ''

After showing the application of these remarks to the case then in hand, Judge GANTT proceeds thus: ''We hold that a petition for partition, that thus discloses the interests of persons not made parties to the suit, does not state a good cause of action in partition, either under the statute or in equity, and that a decree rendered without bringing in such parties is erroneous on its face, and will be reversed in this court on appeal or writ of error, although no motion in arrest or exception was made in the trial court and preserved in the bill of exceptions.''

So, in a case where the point was made and urged at the trial and set up in the motion for a new trial, the result must be the same.

These considerations compel the reversal of the decree and the remanding of the cause to the circuit court with directions to set aside its interlocutory decree of partition and sale, as well as the sale thereunder made; to enter an order directing the special commissioner who made the same, to refund to the purchaser the amount paid by him on his purchase; to permit plaintiffs to amend their petition by making Charles Edward Johnson, if alive, or his unknown heirs or devisees, if he be dead, parties to this cause, and to bring him or them within its jurisdiction, and thereupon to take such other steps as may be necessary and not inconsistent with this opinion. All concur.

## MODIFICATION ON STIPULATION.

SHERWOOD, P. J.—Upon the stipulation of the parties to this cause, the opinion and judgment herein are so far modified as to strike out both of the opinion and judgment, the following portion thereof, to-wit:

''With directions to set aside its interlocutory decree of partition and sale, as well as the sale thereunder

made; to enter an order directing the special commissioner who made the same to refund to the purchaser the amount paid by him on his purchase; to permit plaintiffs to amend their petition by making Charles Edward Johnson, if alive, or his unknown heirs or devisees, if he be dead, parties to this cause and to bring him or them within its jurisdiction.''

This will be done and the opinion as modified will stand, the judgment being reversed and the cause remanded, but, as stipulated, without further directions than that the cause shall be proceeded with in accordance with the opinion.