# SULLIVAN,

## JANUARY TERM, A. D. 1859.

---

### ROBERTSON *v.* WILSON.

Where land is devised to one for life, remainder to his oldest surviving son in fee, the remainder, during the continuance of the particular estate, is contingent; and a quitclaim deed of the land, made by the oldest son of the tenant for life, in his father's life time, will not convey the contingent remainder; nor will the oldest son, if he survive the father, be estopped by the deed from claiming under the limitation in remainder.

But if the oldest son of the tenant for life make a deed before his father's death, purporting to convey his contingent interest under the devise, and in the deed covenant against all claims made by or under him, he will be estopped by his covenant to claim the land at the death of his father, and the estoppel will operate to convey the remainder to his grantee.

WRIT OF ENTRY. The following facts appeared on trial. On the 13th of May, 1822, Jonathan Eastman, being seized of the demanded premises, devised them to his son, Jeremiah Eastman, for his life, and devised the land over in the following terms: "And after the death of my said son Jeremiah, I give and devise the same lands to the oldest son of the said Jeremiah that may be then living." Jonathan Eastman died seized, and Jeremiah Eastman, in 1847, conveyed by quitclaim deed all his interest in the land to his oldest son, Edward M. Eastman. On the 12th of January, 1848, Edward M. Eastman being in failing circumstances, made an assignment under the statute of all his property, real and personal, to Andrew C. Wallace,

for the benefit of his creditors. The substance of this deed is stated in the opinion of the court.

On the 24th of November, 1848, Wallace sold at auction and conveyed by deed all his right, title and interest as assignee in the demanded premises to the defendant. On the 30th of May, 1853, Edward M. Eastman, by deed of that date, conveyed to the demandant all the right, title, interest and claim, which, either in law or in equity, he might, or could in any event have upon the death of his father, Jeremiah Eastman, in and to all and singular the property and estate, real, personal and mixed, of every nature and kind, wherever situated, by virtue of the will of his grand-father, Jonathan Eastman, meaning to convey " all the possible interest and title which I might or can in any possible event have by virtue of said will," " as the oldest son of my father, Jeremiah Eastman, or otherwise." This deed contained certain covenants, which are stated in the opinion of the court.

Jeremiah Eastman died in April, 1854, leaving two sons, of whom Edward M. Eastman was the oldest.

*Tappan*, for the plaintiff.

*Burke*, for the defendant.

PERLEY, C. J. . Both parties claim under the will of Jonathan Eastman, who devised the demanded premises to his son Jeremiah for life, and the remainder in the following terms: " And after the death of my said son Jeremiah, I give and devise the same lands to the oldest son of the said Jeremiah that may be then living, and his heirs forever." Edward M. Eastman was the oldest son of Jeremiah, and survived his father. After the death of Jonathan Eastman, the devisor, and before the death of Jeremiah Eastman, the tenant for life, Edward M. Eastman made the deed to Wallace under which the defendant

claims, and afterwards, but in the life time of his father, the deed under which the demandant claims. No new title vested in Edward M. Eastman between the two conveyances.

Was the interest of Edward M. Eastman at the time when he made these conveyances a vested or a contingent remainder? If Edward M. Eastman survived his father, the land by the will went to him and his heirs; but if he died before his father the land would go to the oldest surviving son, and not to the heirs of Edward M. Eastman. The event, upon which the estate of Edward M. Eastman was to take effect in possession, to wit: whether he outlived his father, was, therefore, uncertain; and the person who would be entitled to the remainder was also uncertain; for until the death of Jeremiah Eastman it could not be known who would be his oldest surviving son. Here the contingency upon which the remainder was to take effect in possession was collateral to the determination of the particular estate for the life of Jeremiah Eastman, but it was a dubious event which was required to precede the determination of that estate, in order to give effect to the remainder in Edward M. Eastman. Edward M. Eastman, when he made the conveyances in question, was the oldest son of Jeremiah, and if he survived his father would be entitled to the land in fee; but whether he would survive his father was an uncertain event, and the person who might be entitled to take the remainder on the death of Jeremiah, was equally uncertain. Consequently, if the particular estate had been destroyed in the life time of Jeremiah Eastman, there would have been no person qualified to take the remainder; for until his death it could not be known who would be his oldest surviving son. Both the person to whom, and the event upon which the remainder was to take effect, were uncertain, and this would make the remainder contingent. Fearne on Contingent Remainders, ch. 1, sec. 1; *Goodright* v. *Dunham,*

Robertson *v.* Wilson.

Doug. 267 ; *Doe* v. *Scudamore,* 2 Bos. & Pul. 289 ; *Smith* v. *Belay,* Cro. El. 630 ; *Doe* v. *Provost,* 4 Johns. 65 ; *Blanchard* v. *Brooks,* 12 Pick. 47.

A remainder may be vested, though there is no certainty that it will ever take effect in possession ; as, where the limitation is to A for life, remainder to B for life, the remainder is vested in B, though he may not outlive A, and may never take the remainder in possession. But the remainder being limited upon the estate for the life of A, B is qualified to take in remainder whenever the particular estate may determine, though in the life time of A. But if the estate were limited to A for life, remainder to B after the death of A, the remainder would be contingent, because, if the particular estate should determine in the life time of A, there would be no person qualified to take the remainder. 2 Cru. Dig. 210.

We are, therefore, of opinion that Edward M. Eastman, after the death of his grand-father, and before the death of his father, had a contingent and not a vested remainder.

A contingent remainder is not an interest that can be conveyed by deed, operating at the time of the conveyance on an existing estate, or that can be taken for debt under legal process. The remainder, in this case, being contingent, the law would seem to be clear on authority that neither the deed to Wallace nor the deed to the demandant could convey any legal estate during the life time of Jeremiah Eastman. If either of the parties in this suit at law can claim any title to the land, it must be, not on the ground that either of Edward M. Eastman's deeds conveyed any estate at the time of its execution, but on the ground that his deed estops him to claim the land, and that when the remainder vested in him, upon the death of his father, the estoppel operated to transfer the estate to this grantee. 10 Coke 51 ; Shep. Touchstone 239 ; 4 Kent's Com. 261 ; *Hall* v. *Chaffee,* 14 N. H. 215.

The deed of Edward M. Eastman to Wallace purports to convey the assignor's property in these terms: "do grant and assign to the said Andrew C. Wallace all my property, estate, rights and credits, of every description, except such portion of the same as is by law exempted from attachment and execution, a schedule of the principal part thereof being hereto annexed." The schedule annexed contained a description of the demanded premises. There was no covenant in the deed. Edward M. Eastman had a life estate in the land by conveyance from his father. This was an estate liable to attachment and execution for his debts, and was conveyed by the deed; but his contingent claim under his grand-father's will was not liable for his debts, and that claim the deed does not undertake to convey. *Brown* v. *Gale*, 5 N. H. 416. There is nothing in the deed to estop Edward M. Eastman from claiming the land upon the death of his father, under the limitation in his grand-father's will. The defendant took from Wallace only an estate for the life of Jeremiah; and as he had no claim except under his deed from Wallace, it follows that since the death of Jeremiah Eastman he has had no title in the land.

The deed to the demandant "releases, remises and forever quitclaims" all the future, contingent and possible interest of Edward M. Eastman, under the will of Jonathan Eastman, and purports to convey all that interest to the demandant, and contains the following covenant: "I do hereby covenant with the said Harrison D. Robertson that I will warrant and defend the said premises to him, his heirs and assigns, against the lawful claims and demands of any person or persons claiming by, from or under me, by virtue of any title that I have, or may hereafter derive under the last will of Jonathan Eastman, deceased."

It may be observed that Edward M. Eastman covenants to warrant and defend against all demands *derived under*

*him,* but does not, in terms, covenant that he will not claim the land himself. He however had, and claimed to have, nothing in the land but his contingent right under the will of his grand-father, and undertook to convey nothing else; and when he undertakes, by his deed, to convey this possible and contingent right, and covenants that he will warrant and defend all claims and demands derived under him by virtue of any right that he then or thereafter might have, we think it is necessarily implied that he will not claim the land himself. If it were not so, and he could enter on the land notwithstanding the covenant, he would have a fee simple under the will, which he could not alienate to another; for if he undertook to convey, his covenant would operate by way of estoppel, and transfer the title, not to the purchaser but to the demandant. The legal effect of the covenant must be, that he will not claim the land himself, and will warrant against all claims made under him by others.

Such being the effect of Edward M. Eastman's covenant in his deed to the demandant, he is estopped by it to claim the remainder at the death of his father, and the estoppel operates to convey the land to the demandant. *Wark* v. *Willard,* 13 N. H. 389; *Jewell* v. *Porter,* 31 N. H. (11 Fost.) 34; *Hermitage* v. *Tompkins,* 1 Ld. Raym. 729; Com. Dig., Estoppel, B. & E. 10; *Smith* v. *Ingalls,* 13 Me. 281; *Pike* v. *Galvin,* 29 Me. 183; *Croker* v. *Pierce,* 31 Me. 177; *Pope* v. *Henry,* 24 Vt. 560; *Jarvis* v. *Aikens,* 25 Vt. 635; *Bush* v. *Marshall,* 6 How. U. S. 284; *Van Rensselaer* v. *Kearney,* 11 How. U. S. 294; *Bank of Utica* v. *Sherman,* 3 Barb. Ch. 528. This rule, that a future possible interest may be conveyed by way of estoppel, has been applied to the case of a contingent remainder. 4 Kent's Com. 98; Com. Dig., Estoppel, B. & E. 10; *Fortesque* v. *Sattlethwaite,* 1 Ired. 566.

The conclusion is, that the defendant, under his deed from Wallace, took only the life estate derived from Jeremiah Eastman; that the covenant of Edward M. Eastman,

in his deed to Robertson, operated by way of estoppel to convey the estate in remainder when it became vested in Edward M. Eastman, on the death of his father, and that, on the case stated, there must be

*Judgment for the demandants.*