OTTIE INLOW et al.; JAMES A. THOMAS, Appellant, v. CORA B. HERREN et al.; JAMES A. NEWMAN et al., Appellants.

Division One, December 19, 1924.

1. CONVEYANCE: Estate in Expectancy: By Quitclaim Deed: Estoppel. A quitclaim deed can operate to convey only such interest as is at the time of its execution vested in the grantor, and is inoperate as such to pass an after-acquired title; but if in addition to the usual recitals it further recited that "the grantors herein convey all their right, title and interest that they now have in the above described land and any right, title and interest that

Inlow v. Herren.

they may acquire in the future as heir" of their mother, who was then living and was the owner and in possession, their clear intention was to convey whatever estate in expectancy they might thereafter inherit from her as her heirs apparent; and an expectancy in land being the subject of contracts and the parties being *sui juris*, the consideration adequate and no element of unfairness or fraud appearing, the agreement operates as an estoppel upon the grantors, after the mother's death, to assert title in themselves, but will be enforced in equity.

2. ———: ———: ———: **By Married Woman: Estoppel: Statutes.** The old statute (Sec. 2396, R. S. 1889) provided for the conveyance of the wife's real estate by the joint deed of husband and wife, and declared that "no covenant, express or implied, in such deed, shall bind the wife, or the heirs, except so far as may be necessary effectually to convey from her and her heirs all her right, title and interest expressed to be conveyed therein," and said statute remained unchanged until the Act of 1905 (Laws 1905, p. 94; R. S. 1919, sec. 2175), whereby it was provided that "any covenant expressed or implied in any deed conveying property belonging to the wife, shall bind the wife and her heirs to the same extent as if such wife was a *femme sole*." *Held,* that the joint quitclaim deed of the husband and wife executed in 1897 and therefore after the enactment of the Married Woman's Act of 1889, which contained a recital that "the grantors herein convey all their right, title and interest that they now have in the above described land and any right, title and interest that they may acquire in the future as heir" of her mother, then living, operated in equity to estop her, after her mother's death, from setting up any claim to the land. She was empowered by the statutes, at the time she executed said deed, to contract in reference to her expectancy as though she were a *femme sole*, and having undertaken to convey her expectancy in her mother's land as heir apparent, and the conveyance having been made in good faith, for an adequate consideration, free from undue influence, unfairness or other element of fraud, she is subject to the principles of estoppel to the same extent that any other person would be.

3. ———: **Intention: All Clauses: Situation of Parties: Purpose.** The intention of the grantor is to be ascertained from a consideration of his deed as a whole, and to each related part is to be given its due and relative weight, and the deed as a whole should be considered in connection with the situation of the parties and the purposes sought to be accomplished by its execution.

4. ———: **Entire Estate of Grantor: Use of Word Heirs: Statute of 1855.** The statute in force in 1858 (R. S. 1855, p. 355, sec. 2) pro-

vided that "every conveyance of real estate shall pass all of the estate of the grantor therein, unless the intent to pass a less estate shall clearly appear, or be necessarily implied in the terms of the grant," and under this statute the use of the word "heirs" in a deed made in 1858 was not necessary to create or convey an estate in fee simple.

5. ————: **To Son and Bodily Heirs During Natural Lives: Reservation of Fee: Passed by Residuary Clause in Will.** In 1858 the owner of land and his wife, Amos and Jemina Thomas, "in consideration of the love and affection we have for our son Silas Thomas and to make provision against future contingencies for the maintenance and support of the said Silas Thomas and his bodily heirs," granted and conveyed "unto him and his heirs aforesaid during their natural lives" eighty acres: "to have and to hold the same together with all and singular the privileges, appurtenances, rents, issues and profits thereof, and also all the estate, right, title, interest, possession and claim we have in and to the above described premises, and we will warrant and defend the title to said described tract of land from the claims and demands of all persons whomsoever in the quiet and peaceable possession of him, the said Silas Thomas, and his heirs as aforesaid forever." A clause in said owner's will, executed a year later, read: "To my son Silas Thomas in addition to the lands already conveyed to him, I give and bequeath" another tract of forty acres. The residuary clause read: "The residue of my estate both real and personal I desire to be sold at public sale, the proceeds of which I desire to be divided among my children," naming seven, among them Silas. He had one or more sons and children of a deceased child who were not mentioned in this residuary clause, but for them he made other provisions. Silas Thomas is now deceased, and two of his children, James and Cora, having acquired the interests of his other children and their bodily heirs, contend that Silas took a life estate in the eighty acres and his bodily heirs the fee in remainder. The descendants of the other six children of Amos contend that by the deed Amos created a life estate in Silas and also a life estate in each of his bodily heirs, and that the fee in remainder remained in Amos up to the time of his death and passed by the residuary clause of his will to his said seven children or their heirs. *Held, first,* the intention of the grantor is to be ascertained from a consideration of the deed as a whole, and to each related part is to be given its due and relative weight, and the deed as a whole should be considered in connection with the situation of the parties and the purposes sought to be accomplished through its execution; *second,* the deed was made, in consideration of love and affection, for the purpose of providing "against future contingencies for the maintenance and

Inlow v. Herren.

support of Silas Thomas and his bodily heirs;" *third,* while the granting clause recites that the land is conveyed to Silas "and his bodily heirs during their natural lives" and the *habendum* at first uses the ordinary words, said *habendum* also says that the grantees named are to have "all the rents, right, title, interest, possession and claims we have in and to the above described premises," which words must be considered in their relation to the extent and purposes of the grant, and they are inconsistent with the grant of a life estate only and a reservation of the fee in the grantor; *fourth,* the covenant of the grantor that he will warrant and defend the title "from the claims and demands of all persons whomsoever in the quiet and peaceable possession of him, the said Silas Thomas, and his heirs as aforesaid forever" is likewise inconsistent with a reservation of the fee in himself; *fifth,* the statute then in force (R. S. 1855, p. 355, sec. 2) declared that "every conveyance of real estate shall pass all of the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant," and it does not expressly appear from the deed that the intent of Amos was to pass a less estate than a fee simple; *sixth,* the recital in the grantor's will that he had therefore conveyed land to Silas is opposed to a construction that he intended to devise to the legatees named in the residuary clause the lands he had previously conveyed to Silas or any interest therein; and, *seventh,* the said residuary legatees took no interest in said eighty acres, but the purpose of the grantor was to convey the eighty-acres to Silas and his bodily heirs, by which he took a life estate and they took the fee in remainder.

6. ――――: **To Child and Bodily Heirs: Estate Tail.** A conveyance to a son and his bodily heirs creates an estate tail, which by the statute (Sec. 2267, R. S. 1919; Sec. 5, p. 355, R. S. 1855) is converted into a life estate in the son and at his death the fee vests in his bodily heirs then living.

Citations to Headnotes: 1, **Deeds,** 18 C. J. pars. 32, 198, 299; 2, **Deeds,** 18 C. J. pars 310, and **Husband and Wife,** 30 C. J. pars. 640, 655; 3, 4 and 5, **Deeds,** 18 C. J. pars. 203, 205, 315 (1926 Anno), 229, 282; 6, **Estates,** 21 C. J. par. 43.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

Affirmed *(in part)* and reversed *(in part).*

*Frank Howell* for Jennie Ann Newman et al., appellants, and Fannie I. Thomas, respondent.

(1) The quitclaim deed by Fannie I. Thomas to James A. Thomas could only pass such interest or title to the ninety-acre tract as she owned at that time. Bogy v. Jacob, 13 Mo. 380; Ridgeway v. Holliday, 59 Mo. 455; Butcher v. Rogers, 60 Mo. 140; Brawford v. Wolfe, 103 Mo. 397; Valle v. Clemens, 18 Mo. 490. Quitclaim deeds are similar to the old deeds of release and purport to release and quitclaim only the interest that the grantor possesses at the time. By the use of this form of deed the grantor does not affirm that he has at the time any title and he is not precluded from enforcing against his grantee a valid title subsequently acquired. 1 Devlin on Deeds (3 Ed.) chap. 2, sec. 27; 3 Devlin on Deeds (3 Ed.) chap. 36, sec. 1281b.; Frink v. Darst, 14 Ill. 304; Bruce v. Luke, 9 Kan. 201; McClure v. Raben, 125 Ind. 139; 8 R. C. L. sec. 116. And accordingly it is considered that one cannot convey a mere inchoate right in land owned by another. Waters v. Wagley, 53 Ark. 509; Davenport v. Williams, 133 Ind. 142. (2) An heir's deed to lands which he expects to inherit are considered in the nature of a gambling contract and a fraud upon the ancestor and are against public policy. McClure v. Raben, 125 Ind. 139; Sec. 117, p. 1063, 8 R. C. L.; Sec. 116, p. 1063, 8 R. C. L; Frink v. Darst, 48 Ill. 304; Bruce v. Luke, 9 Kan. 201; Waters v. Wagley, 53 Ark 509; Davenport v. Williams, 133 Ind. 142; Touchard v. Crow, 20 Cal. 150; Barnard v. Duncan, 76 Neb. 189. (3) It is the contention of the nineteen defendants who are the appellants here, in regard to the eighty-acre tract, that the deed of Amos Thomas conveyed only a life estate to the grantees therein named. It is a well-established rule that a deed is to be construed as nearly as possible in harmony with the purpose and intent of the grantor, and that purpose and intent are to be determined from the terms of the instrument gathered from the four corners of the deed. Garret v. Wiltse, 252 Mo. 707; Eckle v. Ryland, 256 Mo. 440; Howell v. Sherwood, 242 Mo.

536. (4) The deed by its express terms grants an estate for a period during the natural lives of the grantees therein, and there is nothing in the deed to indicate an intent to convey more than a life estate. This being true the fee in remainder to the eighty-acre tract remained in Amos Thomas to the time of his death and was devised by the residuary clause of his will to the nineteen defendants, or those under whom they are claiming.

*Barrow & Barrow* and *Hostetter & Haley* for James A. Thomas.

(1) The quitclaim deed is sufficient to carry the one-fourth interest inherited by Fannie I. Thomas from her mother, Sarah Helen Thomas, to the grantee, James A. Thomas. (a) The authorities are all one way on the proposition that in construing deeds and in determining the effect of same and in arriving at the intention of the parties more weight is given to the clauses which are written in, than to the regular printed matter which constitutes the form of the deed and its usual stock clauses. (b) Sarah H. Thomas died intestate on October 21, 1917, and Fannie I. Thomas did in fact acquire as one of her heirs an undivided one-fourth interest in the said ninety-acre tract; she was *sui juris* at the time of making the deed. (c) Fannie I. Thomas received a valuable consideration for this conveyance of her future acquired interest. She is estopped to claim the interest she had previously sold and been paid for. James A. Thomas pleads estoppel as against her. (2) Granting that an ordinary quitclaim deed conveys only the interest that the grantors then owned, still, this deed is more than a quitclaim deed. It singles out and conveys the future acquired interest. It is in accord with the trend of authority to make all interests in land, present· or prospective, vendible; this rule should prevail unless it encounters some principle of public policy to prevent it, and there is none which would prevent the taking effect of this deed in controversy as the parties intended

that it should.     Contingent remainders are alienable.
Summet v. Realty Co., 208 Mo. 501; Godman v. Simmons,
113 Mo. 122; Reinders v. Koppelmann, 68 Mo. 482; Bopst
v. Williams, 287 Mo. 317.     (3)     Under the doctrine of
estoppel pleaded in this case by James A. Thomas, the
grantor, Fannie I. Thomas, who expressly sold and con-
veyed her future interest in the ninety-acre tract as the
prospective heir of her mother, who then owned the said
tract, is estopped from claiming the same as against
her solemn deed.   3 Devlin on Real Estate, sec. 1281a;
Johnson v. Johnson, 170 Mo. 52; Spears v. Spaw, 25 L.
R. A. (N. S.) 436, note.   (4)   Under the modern doctrine,
and we might add, the common-sense doctrine, govern-
ing the interpretation of deeds, the intention of the par-
ties to the instrument is the controlling factor.   It is
manifest that the grantor, Amos Thomas, clearly had in
mind and intended to convey a life estate to his son, Silas
Thomas, and the remainder in fee to his son's bodily
heirs.     The will of Amos Thomas, which was executed
in 1859, a little more than a year after he executed the
deed, furnishes internal and intrinsic evidence that he
did not intend any such an absurd construction to be
placed on said deed.   He makes reference in the will to
the lands he had already conveyed to his son, Silas.   If
the position of counsel for the nineteen appellants on
this issue be correct, then Amos Thomas owned the re-
mainder in fee to the eighty-acre tract after the life es-
tate of Silas and the life estate of his bodily heirs should
end, and the will is significantly silent as to the disposi-
tion of such remainder interest; and there is always a
legal presumption against partial intestacy.

LINDSAY, C.—The plaintiffs in this cause, under
the first count of their petition, asked for determination
of title to certain lands in Pike County, setting forth
therein the interests owned or claimed by the several
parties; and in the second count, asked for a degree of
partition in accordance with the respective interests as-
serted.   The entire body of land consisted of two hundred

forty acres, but the interests as alleged had reference
to the respective claims of the parties in three several
tracts, one of seventy acres, one of ninety acres, and one
of eighty acres.  Upon the trial it was found, and it is
conceded here, that James A. Thomas, one of the plain-
tiffs, was sole owner of the seventy-acre tract, and that
tract, and any issue as to it, was eliminated.  The court
entered its decree for the sale in partition of the ninety-
acre tract, and of the eighty-acre tract, and for distribu-
tion of the proceeds among the parties, in accordance
with their respective rights as found; and a sale of these
two tracts having been made and approved, an order of
apportionment of the proceeds was entered.  The court,
upon the taking of the appeals, ordered the net proceeds
of sale to be held pending the appeals.  The rights in-
volved here are the rights in the net proceeds.

The cause is here upon cross-appeals:  First, the
appeal of James A. Thomas, one of the plaintiffs, who
assigns error in the finding that he was not the owner
of an undivided one-fourth interest in the ninety-acre
tract, claimed by him under a deed from his sister Fan-
nie I. Thomas, who was his rival and the successful
claimant for said one-fourth interest.  Second, the ap-
peal of Jennie Ann Newman and others, constituting nine-
teen of the defendants, who assign error in that they
were adjudged to have no interest in the eighty-acre
tract, but that the eighty-acre tract was found to be
owned by said James A. Thomas, a plaintiff, and by Cora
B. Herren, a defendant, both of whom are respondents
here upon the issue of title to said eighty-acre tract.

I.  The issue first considered is that related to the
interests of James A. Thomas and Fannie I. Thomas in
the ninety-acre tract.  The facts upon which this issue
arises, are simple.  It was admitted that as to
this ninety-acre tract the common source of
title was Sarah Helen Thomas, who was the
mother of James A. Thomas, Fannie I. Thomas and Cora

*Quitclaim Deed.*

Herren, and the grandmother of plaintiff Ottie Inlow and eight other plaintiffs, who are children of Lee Routen, a deceased daughter of said Sarah Helen Thomas, deceased. It was admitted that said Sarah Helen Thomas acquired fee simple title to the ninety-acre tract by a deed made May 15, 1880, and that she continued to own the ninety-acre tract until her death, in October, 1917, and that she died intestate. Her heirs at law, therefore, are her son, said James A. Thomas, her daughters, Fannie I. Thomas and Cora B. Herren, and her grandchildren, Ottie Inlow and others, children of Lee Routen, deceased. The issue between James A. Thomas and Fannie I. Thomas as to this ninety-acre tract arose, and depends upon the effect of a deed made by Fannie I. Thomas to James A. Thomas on August 6, 1897, whereby Fannie I. Thomas undertook to convey to James A. Thomas any interest she might thereafter acquire in the land as heir of her mother, Sarah Helen Thomas. James A. Thomas claimed that by virtue of this deed Fannie I. Thomas had no interest in the ninety-acre tract, but that he had acquired the one-fourth interest which she, otherwise, would have inherited from her mother. This deed is as follows:

"This indenture made on the sixth day of August A. D. one thousand eight hundred and ninety-seven by and between Fannie I. Thomas and Samuel S. Thomas her husband of the County of Macon and State of Missouri, parties of the first part, and James A. Thomas of the County of Audrain in the State of Missouri, party of the second part:

"Witnesseth, that the said parties of the first part, in consideration of the sum of one hundred dollars, to them paid by the said party of the second part, the receipt of which is hereby acknowledged do by these presents, Remise, Release and forever Quitclaim unto the said party of the second part, the following described lots, tracts or parcels of land, lying, being and situate in the County of Pike and State of Missouri to-wit:

"The southwest quarter containing one hundred sixty acres also the west half of the northwest quarter containing eighty acres all in Section 15, Township 52, Range 4 West.

"The grantors herein convey all their right, title and interest that they now have in the above described land and any right, title and interest that they may acquire in the future as heirs of Sarah H. Thomas and Cora B. Thomas.

"To have and to hold the same, with all the rights, immunities, privileges and appurtenances thereto belonging unto the said party of the second part, and his heirs and assigns forever; so that neither the said parties of the first part, nor their heirs, nor any other person or persons for them or in their name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every of them shall by these presents, be excluded and forever barred.

"In witness whereof the said parties of the first part have hereunto set their hands the day and year first above written.

"FANNIE I. THOMAS,"
"S. S. THOMAS."

The ninety-acre tract now in issue is a part of the two hundred forty acres described. This deed was acknowledged by the grantors on August 6, 1897, and was filed for record on August 8, 1897. The trial court held that this deed was insufficient to convey any interest which Fannie I. Thomas thereafter inherited from her mother upon the death of the latter in October, 1917. The issue was made under the pleadings as follows: James A. Thomas pleaded ownership of a one-half interest in the ninety-acre tract. Fannie I. Thomas denied this, and pleaded that James A. Thomas owned a one-fourth interest, and that she owned a one-fourth interest therein, to which James A. Thomas replied, setting up the making of the aforesaid deed, and plead-

ing that by virtue thereof, and of acceptance of a valu-
able consideration therefor, Fannie I. Thomas was
estopped from claiming any interest in the tract men-
tioned. The court overruled the motion of Fannie I.
Thomas, to strike out that portion of the reply of James
A. Thomas which set up an estoppel, the ground of the
motion being that such portion was a departure from
the petition, and also that it did not state facts sufficient
to constitute any defense to her answer. There is no
denial of the allegation of the payment of the considera-
tion for the deed. There is no allegation or proof of
fraud in procuring the execution and delivery of the
deed. The issue is presented squarely and solely upon
the effect of the terms of the deed itself.

As a mere quitclaim deed it could operate to convey
only such interest as was already vested in the maker,
and was inoperative to pass an after-acquired title.
[Bogy v. Shoab, 13 Mo. 365; Gibson v. Chouteau's Heirs,
39 Mo. 536; Ridgeway v. Holliday, 59 Mo. 444; Butcher
v. Rogers, 60 Mo. 138.]

The deed is distinguished from an ordinary deed of
quitclaim by the provision inserted:

"The grantors herein convey all their right, title
and interest that they now have in the above described
land and any right, title and interest that they may
acquire in the future as heir of Sarah H. Thomas and
Cora B. Thomas."

This provision written into the body of the deed
not only shows a purpose to convey the expectancy of
Sarah I. Thomas as prospective heir of her
mother, but leads reasonably to the conclu-
sion that the transfer of her expectancy was
a thing uppermost in the minds of the parties. In this,
as in every deed, its operation, as passing any particular
right, is largely a matter of intention. In this deed the
intention of the grantor, to pass to the grantee, whatever
right in this land there might fall thereafter to the
grantor as heir of her mother, is clearly expressed.

**Transfer of Expectancy.**

There has been much discussion of the subject of the transfer of expectancies, by the courts of the several states in this country, and by the English courts. There is much of variety in the views expressed, and in the reasons held to be compelling one way or the other, and there is not entire harmony. The subject has been made interesting by the reasoning and learning to be found, in the opinions of judges, and the texts of writers upon the law; but any general review of these here would be more lengthy than is necessary, or profitable.

An elaborate review of the cases may be found in 17 A. L. R. at page 597, in the note appended to the opinion in Hunt v. Smith, p. 588, 191 Ky. 443. The generally accepted doctrine is stated in Taylor v. Swafford, 122 Tenn. 303, where it was said: "Both in English and American courts of equity, where it is found that the contract of an expectant has been fairly made and upon a valuable consideration, it will be enforced, as against the grantor and his privies, whenever the property covered by it comes into possession. This is done, however, by these courts, not upon the ground that the grant is one of a present interest, but rather upon that stated by GIBSON, J., in Chew v. Barnett, 11 Serg. & R. (Pa.) 389, to-wit:

"That a conveyance before the grantor has acquired the title, operates as an agreement to convey which may be enforced in chancery between the parties and against purchasers with notice."

And the doctrine of estoppel has been applied by the courts, in cases involving the sale and attempted transfer of an expectancy. In Johnson v. Johnson, 170 Mo. 34, the question was at issue under a deed containing covenants of warranty. In that case the grantor was conveying the undivided three-sevenths interest, which, it was recited, was the one-seventh interest inherited by him, and two-sevenths acquired by him from two other heirs. He and they at that time had inherited no interest. The holding was that the recital as to what the

grantor had inherited did not restrict the grant to less than three-sevenths, and that the covenant of warranty carried the after-acquired title by estoppel. This court said, l. c. 170 Mo. 52:

"A further argument against the contention of defendant; it is asserted that an heir cannot, before the death of his ancestor, convey his expectancy; and that the law ought not to enforce on him against his will what it would not let him do if he desired; but we cannot yield to that argument. The cases in which a sale of an expectancy in lands of a living ancestor has been enforced, even at law, through the doctrine of estoppel springing from the covenants in a deed, are numerous. [Steele v. Frierson, 85 Tenn. 430; Bohon v. Bohon, 78 Ky. 408; Somes v. Skinker, 3 Pick. 52; Robertson v. Wilson, 38 N. H. 48; House v. McCormick, 57 N. Y. 310; Habig v. Dodge, 127 Ind. 31, followed and approved in Jerauld v. Dodge, 127 Ind. 600; Fairbanks v. Williamson, 7 Me. 96; Stover v. Eycleshimer, 46 Barb. 84; Rosenthal v. Mayhugh, 33 Ohio St. 155; Read v. Fogg, 60 Me. 479.]"

In the case at bar the doctrine of estoppel must spring, if at all, from the special provision incorporated into the deed showing an agreement, and a clear intention to transfer the expectancy, aided if it be, by the provision of non-claim thereafter, of any interest in the land. The case is not wholly without precedents. In Clendening v. Wyatt, 54 Kan. 523, which was a suit to determine title, and for petition of land, the very question at issue here was raised and determined. The court said, at page 525:

"It is the general rule that an assignment at law will not be sustained unless the subject-matter has an actual or potential existence when the assignment is made, but it appears to be well settled that an expectancy of an heir in an ancestor's estate may become the subject of contract, and may be assigned in equity. Courts of equity will uphold such an agreement of an heir apparent where it is fairly made and for an ade-

quate consideration.  If no unjust advantage is taken of the indiscretion or necessities of the heir, and. if the agreement is not unconscionable, and is not obtained by fraud or oppression, it may be enforced in equity after the death of the ancestor.  [Steele v. Frierson, 85 Tenn. 430; Story, Eq. Jur. sec. 1040; Pom. Eq. Jur. secs. 1287, 1288; 1 Am. & Eng. Ency. Law, 830, and cases cited.]  In the present case, it does not appear that there was any unfairness or fraud in the transaction.  There is no suggestion that the consideration is inadequate, nor that any unjust advantage was taken of John Clendening.  Indeed, it was not charged or shown that there was any misrepresentation, unfairness, oppression, nor insufficient consideration.  John Clendening, who executed the writing, had evidently reached years of maturity, as he was a married man, whose wife joined him in the execution of the contract.

"It is insisted that this contract is in form a quitclaim deed, under which only the present existing interest of John Clendening in his mother's estate would pass.  It is true that, ordinarily, the grantee in a quitclaim deed gets nothing except what his grantor in fact owned at the time of the execution of the deed.  [Johnson v. Williams, 37 Kan. 179.]  And if the contract in question was to be treated as a quitclaim deed, which did not purport to do more than to convey an existing interest, it could not be sustained.  It is manifest, however, from the language used that Clendening was bargaining about a future interest which he did not possess at the time, and which he expected to acquire at the death of his mother.  In the latter part of the contract it is recited that 'the said John Clendening and Kate, his wife, do hereby (in consideration as above) release, remise and forever quitclaim to his undivided portion that he may be entitled to of his mother's estate to the said August Wyatt, his heirs and assigns.'  He had no interest in the land at the time the contract was made. His mother was then alive, and from the face of the

contract it distinctly appears that he was contracting away the undivided and future interest which he expected to acquire from his mother's estate at the time of her death. There is a specific description of the land in controversy in the contract, showing that the property now sought to be recovered was within the contemplation of the parties when the contract was made. Such a contract based upon ample consideration, honestly and fairly made, with one who is capable to contract, may be enforced in equity.''

A similar provision was contained in the quitclaim deed involved, in Thornton v. Louch, 297 Ill. 204, and held to convey an after-acquired title. In that case the expectancy spoken of appears to have been that interest which the grantor took as one of the survivors of his sister, who, after the making of the deed in question, died without issue, and before the death of the life tenant, the mother of the grantor, the contingency being one provided for by the will of the grantor's father. The court said, at page 210:

''The principal question presented for decision is the effect of the provision in the quitclaim deed of August 31, 1906, from William R. Louch and wife to Joseph T. Louch, wherein the grantors recite: 'It is the intention to convey to grantee by this instrument all right, title and interest the grantor has or may have in the above described real estate by virtue of heirship of the late Thomas Louch, deceased, or under his will, possession of which is deferred during the lifetime of Eliza Louch, widow of Thomas Louch, deceased.'

''William R. Louch, at the time of the execution of the quitclaim deed by him and his wife, had a base fee in an undivided one-fourth interest in the land in question which was subject to conveyance by deed, but which was subject to be determined and defeated should he die without issue before the death of his mother. He also had an expectant interest in the land in question if he should survive his mother and if his brother or either

of his sisters should die without issue before the death of his mother, the life tenant. He would then share in such deceased child's share. This latter interest was not subject to conveyance by ordinary quitclaim deed, for such deed conveys nothing more than the present interest of the grantor. [DuBois v. Judy, 291 Ill. 340.] Such deed may, however, contain recitals which will convey an after-acquired title, and where an after-acquired title is conveyed by such deed it operates by way of estoppel. [Van Rensselaer v. Kearney, 11 How. 297; McAdams v. Bailey, 169 Ind. 518, 82 N. E. 1057; 21 C. J. 1073; 11 Am. & Eng. Ency. Law (2 Ed.) 410.]

"William R. Louch conveyed to Joseph T. Louch 'all right, title and interest the grantor has or may have in the above described real estate by virtue of heirship of the late Thomas Louch, deceased, or under his will.' The language itself clearly indicates an intention on the part of the grantor to convey all interest that he then had in the property and in addition to that interest his expectancy as heir and devisee of his father. An examination of the evidence shows that William intended to sell and Joseph intended to buy all the interest of William, present and in expectancy, in the estate of his father."

In McAdams v. Bailey, 169 Ind. 518, the deed under consideration was one containing covenants of warranty, but containing also certain special recitals as to the conveyance therein of interests which might thereafter be inherited. That court after discussion of the two general classes of deeds and of the assignment of expectancies or of interest in things not in being, and the remedies, said, l. c. 523:

"Although, as above indicated, an ordinary quitclaim deed will not estop the grantor from asserting an after-acquired interest, yet a distinct recital in such a deed, showing that the parties proceeds on the theory that a particular interest was thereby conveyed, may be as effectual to create an estoppel as a warranty. [Van

Rensselaer v. Kearney, 11 How. 297; 1 Jones, Real Property, sec. 991.] Appellant, however, insists that there can be no estoppel where the truth appears in the instrument. This is, no doubt, a general principle as applied to ordinary recitals. We question the application of this doctrine to distinct undertakings for the transfer of after-acquired property. We place our ruling, however, not on the effect of the recitals, as such, but on the ground that an estoppel exists because of the covenant of warranty.''

In this deed there is no covenant of warranty, but there is clear intention to convey the expectancy, the estate in the lands described thereafter to be inherited, with the usual agreement or covenant of non-claimer thereafter of any right or title to the premises. In the Johnson case above mentioned (170 Mo. 34), the grantor was not a married woman, and the question of coverture of the grantor did not arise in any of the cases that have been mentioned.

*Married Woman.*

In Brawford v. Wolfe, 103 Mo. 391, a case relied upon by counsel for respondent, the grantor was a married woman, and the deed was one with covenants of warranty. It was held that this deed, executed by her and her second husband, did not suffice to pass to the grantee the title afterward acquired by her, by the subsequent filing by her of her election to take, absolutely, one-half of the estate of her former husband, deceased. At that time, the statute governing conveyances of real estate of the wife by the joint deed of herself and her husband, contained the provision: ''but no covenant, express or implied in such deed, shall bind the wife, or the heirs, except so far as may be necessary, effectually, to convey from her and her heirs all her right, title and interest, expressed, to be conveyed therein.'' It was held that title acquired by the widow through her election did not inure to the benefit of the grantee ''either by virtue of the equitable principles of estoppel, or by

the operation of the statute." It was held that by virtue of the statute, "her deed is, in its effect, whatever its form, simply a quitclaim of all her existing right, title and interest." The deed involved in that case was executed before the passage of the Married Woman's Act of 1889.

The statute governing conveyances of the wife's real estate remained unchanged until the Act of 1905 (Laws 1905, p. 94; R. S. 1919, sec. 2175), whereby it was provided that "any covenant expressed or implied in any deed conveying property belonging to the wife, shall bind the wife and her heirs to the same extent as if such wife was a *femme sole.*" The deed in issue, it is to be observed, was executed after the passage of the Married Woman's Act of 1889, but before the amendment of 1905 concerning conveyances. In Hendricks v. Musgrove, 183 Mo. 300, this court had under consideration the question whether a deed of a married woman (executed before 1905) passed after-acquired property. After discussing certain defects in the deed in question this court said at page 309: "In addition to this the rule in this State is that the doctrine of after-acquired property does not apply to a married woman's deed (at any rate if it was made prior to 1889 when the Married Woman's Act was passed), but that without regard to the form of the deed only whatever interest she had at the date of the deed passes." [Citing Brawford v. Wolfe and other cases.] In Conrey v. Pratt, 248 Mo. 576, the question of inurement of after-acquired title was in issue, the grantor being a married woman. The deed was made before the enactment of the amendment of 1905, but after the passage of the Married Woman's Act, and the old statute on conveyances and the Married Woman's Act of 1889 were under consideration. After consideration of these, and of the holdings in Hendricks v. Musgrove, and Brawford v. Wolfe, the court said, at page 586: "Whatever may be the powers of a married woman under the Act of 1889, they were not such as to create

a liability against her contrary to the express provisions of the statute (R. S. 1899, sec. 901) in existence at the time of the Married Woman's Act. We are not impressed with the argument of counsel for respondent, that the act giving married women many of the rights of *femme sole* was intended to take away from her the *protection* as to covenants in the conveyances of her *land* afforded by the former statute (R. S. 1899, sec. 901) prior to its repeal in 1905."

The case here does not involve nor rest upon the existence or effect of covenants of warranty, but upon a specific undertaking to convey the estate in expectancy of Fannie I. Thomas, inheritable from her mother, in and to described lands. At the time the instrument was executed, in 1897, she had the right to contract as a *femme sole* in respect of any land or interest therein, then owned by her, which came to her after the passage of the Act of 1889 "by gift, bequest or inheritance." [Secs. 6864, 6869, R. S. 1889; Sec. 7328, R. S. 1919.]

Under the holding in Farmers Exchange Bank v. Hageluken, 165 Mo. 443, and subsequent holdings reviewed and followed in Brook v. Barker, 287 Mo. 13, she could convey her interest in such land as though a *femme sole*. Certainly then it must be held that as to an expectancy she could contract as though a *femme sole*, and doing so be subject to the corresponding obligations. We see no reason for saying that respondent Fannie I. Thomas could not contract for the sale of her expectancy of an interest in an estate, which presumptively would come to her by inheritance from her mother; and be her separate property, and not be bound thereby to the same extent as if she were a *femme sole*, nor why she, having undertaken to convey the expectancy for a valuable consideration, should not be subject to the principle of estoppel to the same extent that any other person would be. It has been said often that contracts for the sale of expectancies are not looked upon with favor, but the general rule is that such transfers if made

upon a valuable consideration, and in good faith, will be valid and enforceable in equity. In this case the parties concerned have submitted this issue solely upon the basis of the terms of the deed, and that there was a valuable consideration. There is not in the record any testimony ·showing fraud or undue influence, or any other vitiating influence, or any of the circumstances under which the deed was made, although the parties thereto were living. We conclude that upon the record made, the court erred in holding that Fannie I. Thomas was not estopped to claim the one-fourth interest in the ninety-acre tract, by the terms of her deed and the acceptance of a valuable consideration therefor.

II. The title of the parties claimant to the 80-acre tract, depends upon the consideration given to a deed made in 1858, by Amos Thomas and wife to their son Silas Thomas and his bodily heirs. The **Grant During Life: Reservation of Fee.** trial court found that the eighty-acre tract was owned by James A. Thomas and Cora B. Herren, who are children of Silas Thomas, deceased, and set forth the nature of their interests, and found that the nineteen defendants, appellants here on that issue, and claiming undivided interests in this tract, had no interest therein. It was agreed that James A. Thomas and Cora Herren had acquired whatever interests had accrued to the other heirs of Silas Thomas. The deed made by Amos Thomas is as follows:

"This deed of gift made the 22nd Day of November in the year one thousand eight hundred and fifty eight, Witnesseth: That we Amos Thomas and Jemima his wife of the County of Pike in the State of Missouri, in consideration of the love and affection we have for our son Silas Thomas of the same county and state and also a desire to make provision against future contingencies for the maintenance and support of the said Silas Thomas and his bodily heirs, do by these presents give,

grant, bargain, sell and convey unto him and his heirs as aforesaid during their natural lives the following described tract or parcel of land situate, lying and being in the County of Pike and State aforesaid, to-wit:

"The east half of the southwest quarter of Section Fifteen in Township Fifty-three of Range Four, West, in the district of lands subject to sale at Palmyra, Missouri, containing eighty acres be the same more or less.

"To have and to hold the same together with all and singular the privileges, appurtenances, rents, issues and profits thereof and also all the estate right, title, interest, possession and claim we have in and to the above described premises valued by us to be worth two thousand dollars and we will warrant and defend the title to said described tract of land from the claims and demands of all persons whomsoever in the quiet and peaceable possession of him, the said Silas Thomas, and his heirs as aforesaid forever. In Witness whereof we have hereunto set our hands and seals the day and year first above written."

The contention of James A. Thomas and Cora B. Herren was and is that by this deed Silas Thomas took a life estate, with remainder in fee to his bodily heirs. The contention of the nineteen appellants is that by this deed Amos Thomas created a life estate in Silas Thomas and also a life estate in each one of his bodily heirs, and that the remainder was in Amos Thomas to the time of his death, and passed by the residuary clause of his will.

The will of Amos Thomas was executed on December 23, 1859. The residuary clause is as follows: "The residue of my estate both real and personal I desire to be sold at public sale at a proper and suitable time after my decease, the proceeds of which I desire to be equally divided among my children as follows: Ann Bradon, Silas Thomas, Margaret Grafford, Louis Thomas, James Thomas, Nancy Harries and William Thomas." The nineteen appellants on this issue are descendants of the

residuary legatees of Amos Thomas, other than Silas
Thomas.   The will of Amos Thomas was admitted to
probate on January 4, 1860.   The will thus executed a
little more than a year after the date of the deed made
by him to Silas Thomas, contains a reference to that
conveyance.   The clause in the will is as follows:

"To my son Silas Thomas in addition to the lands
already conveyed to him, I give and bequeath the follow-
ing described tract of land situated in the county of
Pike and State of Missouri to-wit:"   Then follows de-
scription of forty acres of land.

The question to be determined is the effect of the
foregoing deed.   The intent of the maker is to be ascer-
tained from a consideration of the deed as a whole,
made up of related parts, to each of which is to be given
its due and relative weight.   [Garrett v. Wiltse, 252 Mo.
l. c. 707; Eckle v. Ryland, 256 Mo. l. c. 440; Howell v.
Sherwood, 242 Mo. l. c. 536.]   "The instrument as a
whole should be considered in connection with the situa-
tion of the parties and the purpose sought to be accom-
plished through its execution."   [Brookings v. Scudder,
295 Mo. l. c. 511.]   The will shows that Amos Thomas
had numerous children, and some grandchildren of a
child deceased.   He had one or more sons not mentioned
in the residuary clause of the will for whom he made
provision in the will.   The deed made to Silas Thomas
was made one year before the will was made.   The deed
was made in consideration of love and affection, and for
the purpose of providing "against future contingencies
for the maintenances and support of Silas Thomas and
his bodily heirs."   The granting clause recites that the
property is conveyed to "him and his heirs as aforesaid
during their natural lives."   The *habendum* clause uses
first the ordinary form of words, that it is to be held
"with all and singular the privileges, appurtenances,
rents, issues and profits thereof," but, adds to this,
"*and also all the rents, right, title,* interest, possession
and claims we have in and to the above described prem-

ises." These last words must be considered, in their relation to the extent and purpose of the grant. They are inconsistent with the idea that the grantor was conveying an estate for life or lives only, and was holding the remainder in himself. He values the gift and provision he is making as "worth two thousand dollars." He covenants that he will warrant and defend the title free from the claims and demands of all persons whomsoever in the quiet and peaceable possession of Silas Thomas and his heirs as aforesaid forever. Upon the whole instrument, and the situation as far as shown by the record, we are impressed with the belief that the grantor, Amos Thomas, intended this gift and provision to be for the benefit of Silas Thomas, and his bodily heirs, as distinguished from any other of the heirs of the grantor, and that he undertook to make and did make no reservation to himself or any estate in remainder for the benefit of any other of his heirs or devisees.

The granting clause cannot be taken to obliterate wholly the provision following, which as we take it shows with clearness and emphasis the purpose of the grantor at parting with all his interest and estate in this land. The warranty, in that it warrants quiet and peaceable possession in "Silas Thomas and his heirs as aforesaid forever," cannot, for the reason foregoing be held to apply only to a life estate and to the immediate or first bodily heirs of Silas Thomas. It applies in favor of the bodily heirs of Silas, certainly, but, it applies as against the claims of all persons whomsoever and to the extent of "all the estate, right, title, interest, possession and claim," held by the grantor in and to the premises. At the time this deed was executed there was in force also what is now Section 2265, Revised Statutes 1919 (R. S. 1855, p. 355, sec. 2). Under that section it was provided that the use of the term "heirs" was not necessary to create or convey an estate in fee simple, and it was provided that "every conveyance of real estate shall pass all of the estate of the grantor therein, unless the

intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant.''

The recital in the will as to land theretofore convey-ed to Silas, taken with the residuary clause under which the nineteen defendants claim, is opposed to the conten-tion that Amos Thomas intended, by the residuary clause, to devise land or any interest therein which he had conveyed already to Silas, and his bodily heirs. We are therefore of the opinion that the court did not err in holding that the nineteen defendants had no interest in the eighty-acre tract, by virtue of the joint effect of the deed and the residuary clause in the will.

III. In holding that the nineteen defendants took nothing in the eighty-acre tract by the deed of Amos Thomas and the residuary clause of his will the court further held that James A. Thomas and Cora Herren, two of the children of Silas Thomas, deceased, owned the fee in that tract, having acquired the interests of the other children and heirs of Silas Thomas. In reaching that conclusion the court held that Silas Thomas took a life estate, and his children living at the time of his death took the fee in the eighty-acre tract. It is to be observed of the deed from Amos Thomas to Silas Thomas, that the grant is not to the ''bodily heirs'' or the ''heirs as aforesaid,'' and their heirs and assigns. The word ''assigns'' does not occur in the deed, as they did in Fanning v. Doan, 128 Mo. 323. The deed manifests an intention to convey the land, first, to Silas during his natural life, then to his bodily heirs for their natural lives, forever, in endless succession.

Estate Tail.

We have reached the conclusion that by this deed Amos Thomas undertook to convey an estate tail. The purpose as we gather it was within the definition given: ''Estates tail, then, are estates of inheritance, which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a

306 Mo.—5

direct line, so long as his posterity endures in a regular order and course or descent, and, upon the extinction of such issue, the estate determines.'' [Washburn on Real Property (6 Ed.) p. 89, sec. 190.] As was said in Fanning v. Doan, 128 Mo. l. c. 328: ''Such estates are, in their nature, inalienable, and, upon failure of issue in lineal descent from the first taker, revert to the grantor.'' We think the foregoing is the most sensible and reasonable interpretation of the deed. In that view, Silas Thomas took a life estate, and at his death, his bodily heirs, by force of the statute (Sec. 2267, R. S. 1919; Sec. 5, p. 355, R. S. 1855) took the remainder in fee simple. The construction given by the trial court is approved.

It follows that the judgment in respect of the rights of the parties to the eighty-acre tract therein described should be affirmed, and that the judgment as to the rights of the parties in the ninety-acre tract should be reversed and remanded and that said judgment as to the ninety-acre tract, and the rights of the parties in the proceeds of sale thereof be modified in accordance with the conclusions heretofore stated. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur; *James T. Blair, P. J.,* in the result.