Lynn E. Rhoads and Martha R. Rhoads v. Commissioner.
Rhoads v. Commissioner
Docket No. 95089.
United States Tax Court
T.C. Memo 1963-238; 1963 Tax Ct. Memo LEXIS 106; 22 T.C.M. (CCH) 1205; T.C.M. (RIA) 63238; September 4, 1963
Sidney Barrows, for the petitioners. Sidney C. Freed, for the respondent. FAY
Memorandum Opinion FAY, Judge: The respondent determined a deficiency in petitioners' income tax for 1959 in the amount of $1,398.99. The petitioners claim an overpayment of income tax for 1959 in the amount of $779.50. The primary issue for decision is whether petitioners are entitled to a deduction under either section 165(c)(3) or section 212(2) of the Internal Revenue Code *107 of 1954 for sums paid to settle a legal dispute with persons who sought to obtain Martha's inheritance. If it is determined that the petitioners are not entitled to a deduction under either of these sections, then a secondary issue is presented as to whether the sums paid may be added to petitioners' basis in the inherited property. All of the facts have been stipulated and they are found accordingly. Petitioners are husband and wife residing in Minneapolis, Minnesota. For the year 1959 they filed a joint income tax return with the district director of internal revenue for the district of Minnesota. Martha is a granddaughter of J. Archie Robertson (hereinafter referred to as Robertson) and the daughter of Kenneth A. Robertson (hereinafter referred to as Kenneth). Robertson and Kenneth were residents of Missouri. For many years and until 1947, Kenneth was a member of the board of trustees and treasurer of the Trustees of the Permanent Fund for Conference Claimants of the St. Louis Annual Conference of the Methodist Episcopal Church, a Missouri corporation (hereinafter referred to as the Church). Kenneth became indebted to the Church in an amount in excess of $71,000. In order *108 to satisfy this indebtedness, Kenneth entered into a Contract of Settlement with the Church on February 19, 1948, whereby he agreed to turn over to the Church all of his current assets as well as his expectancy under the will of his father, Robertson. At the time the Contract of Settlement was entered into, Robertson was still living but was incompetent due to a stroke he had suffered earlier. As a supplement to the Contract of Settlement between Kenneth and the Church, an assignment was executed on the same day by Martha, her brother, and her sister, which provided that: We, the undersigned, each being of full age, desiring to assist our father, Kenneth A. Robertson, in effecting a full and final settlement of all his indebtedness to Second Party, [1] as provided for in the foregoing agreement and settlement, and in consideration of Second Party's agreement to said settlement upon the terms of the aforesaid agreement, do hereby jointly and severally, grant, bargain, sell, assign, set over and convey to Second Party, its successors and assigns, all of our expetuancy, inheritance, and contingent interests and rights which we and each of us have or may hereafter have or be entitled *109 to receive from the estate of our grandfather, Dr. J. Archie Robertson, under and by virtue of the terms and provisions of his Last Will and Testament and particularly of all the gifts and bequests made therein to our father, Kenneth A. Robertson, in the trust estate set up and provided by our said grandfather, Dr. J. Archie Robertson, and of any and all our rights, claims, and interests in our said grandfather's estate under the laws of descent and distribution of the State of Missouri or of any other state or country that may be applicable. We hereby further certify that we have seen and read the foregoing settlement agreement of our said father with Second Party and hereby give our consent thereto. WITNESS our hands and seals this 19th day of February, 1948. Mrs. Margaret Robertson Mansur James A. Robertson Martha E. Robertson Both the Contract of Settlement and the supplement to it were executed in the State of Missouri. Kenneth died within a year after executing the Contract of Settlement. On March 17, 1957, Robertson died, and under the laws of descent and distribution of the State of Missouri,kenneth's other two *110 children and Martha, collectively, became entitled to Kenneth's share of Robertson's estate. Following the death of Robertson, the Church notified the executor of his estate that it possessed an assignment from Kenneth's other two children and Martha of their interest in the estate of Robertson. Because of the Church's claim, the executor refused to give Martha her one-ninth share of Robertson's estate. On May 29, 1959, a Release was executed by the Church in favor of Kenneth's other two children and Martha and provided, inter alia, that: WHEREAS, the dispute exists between the parties regarding the validity and enforceability of this document [the assignment], First Party [2] contending that it constitutes a valid and enforceable claim, lien or charge on Second Parties [3] entitlement * * * In accordance with the terms of the Release, Martha paid $6,274.23 (one-third of $18,822.70) to the Church. On her income tax return for 1959 Martha claimed a deduction for the amount paid to the trustees. The respondent disallowed the deduction. The *111 basic issue is whether petitioners are entitled to a deduction under either section 165(c)(3) [4] or section 212(2) [5] of the Internal Revenue Code of 1954[6] for the amount paid to the Church in 1959. 1. Deduction under section 165(c)(3) Petitioners contend that *112 the assignment by Martha to the Church was made under duress and out of fear for the welfare of her father, and that the act of the Church in securing such an assignment and its later insistence upon a payment in satisfaction of that assignment were tantamount to a taking of Martha's property by force and, therefore, equivalent to a loss of property by theft. For tax purposes whether a theft loss has been sustained depends upon the law of the jurisdiction wherein the particular loss occurred. Curtis H. Muncie, 18 T.C. 849 (1952); Samuel Towers, 24 T.C. 199 (1955), affd. 247 F. 2d 233 (C.A. 2, 1957), certiorari denied 355 U.S. 914 (1958); Michele Monteleone, 34 T.C. 688 (1960). In Missouri, the alleged locus criminis, if a person accuses or threatens to accuse another of a felony or threatens to injure anyone with a view or intent to gain or extort money or property and by such threats extorts property from the other, he shall be deemed guilty of robbery in the third degree. Vernon's Annotated Missouri Statutes, Vol. 41, section 560.130. According to the decided cases, in order to sustain a conviction under this section *113 the evidence must be sufficient to show that the person parted with his money out of fear of exposure to a criminal charge or that he was intimidated and, therefore, parted with his money. State v. Williams, 335 Mo. 234, 71 S.W. 2d 732 (1934); State v. Lasky, 133 S.W. 2d 334 (Mo. 1939); State v. Patterson, 271 Mo. 99, 196 S. W. 3 (1917). While a criminal conviction is not a necessary element in a taxpayer's proof in this Court that a theft loss has been sustained, the taxpayer must still show that the loss was occasioned by circumstances clearly indicating theft. Michele Monteleone, supra. In the instant case the petitioners offered no evidence that the Church officials in any way threatened to accuse Kenneth of a felony or that they threatened to injure Kenneth or Martha if their assets were not turned over to the Church. In the absence of such evidence, we must conclude that the petitioners have not carried their burden of proof. We, therefore, sustain respondent's determination that petitioners are not entitled to a deduction under section 165(c)(3). 2. Deduction under section 212(2) The petitioners contend, in the alternative, *114 that upon the death of Robertson, Martha became the absolute owner of a one-ninth interest in his estate, that the estate consisted entirely of income-producing property, and that the payment to the Church was for the purpose of maintaining and conserving this income-producing property. The rule is now well established that the origin and character of a claim with respect to which an expense was incurred rather than its potential effect upon the fortunes of the taxpayer are the controlling basic test of whether an expense is deductible under section 212. United States v. Patrick, - U.S. - (1963). See also United States v. Gilmore, - U.S. - (1963); Deputy v. duPont, 308 U.S. 488, 494, 496 (1940); R. Walter Graham, Jr., 40 T.C. - (April 10, 1963) appeal pending (C.A. 4, June 6, 1963). The facts of record disclose that in 1948 Martha executed for the benefit of the Church an assignment of her expectancy in the estate of Robertson. Robertson was alive at the time. While such an assignment is valid under Missouri law, Bank of Moberly v. Meals, 222 Mo. App. 862, 5 S.W. 2d 1113 (1928); Dennis v. Grand River Drainage Dist., 74 S.W. 2d 58 (Mo. 1934), *115 it does not effect a passage of legal title to the assigneess, but operates merely as an agreement to convey. National Refining Co. v. McDowell, 201 S.W. 2d 342 (Mo. 1947); Keeley v. Indemnity Co. of America, 222 Mo. App. 439, 7 S.W. 2d 434 (1928); Inlow v. Herren, 306 Mo. 42, 267 S.W. 893 (1924). Such being the case, upon the death of Robertson, Martha, notwithstanding her earlier assignment, became the owner at law of a one-ninth interest in the estate of Robertson. Thereafter, a dispute arose between Martha, the owner at law, and the Church, the possessor of an equitable claim to the property. The Church contended that the assignment was valid and that it was entitled to receive Martha's expectancy. Martha claimed the assignment was invalid because it was obtained by duress. It is obvious that if the Church had instituted suit in a Missouri court and pressed its claim to a successful conclusion, Martha's title to the property in the estate would have been lost. Under such circumstances the conclusion is inescapable that the origin and character of the dispute stemmed from and involved the ownership of property and that the settlement of *116 this dispute by the payment of $18,822.70, of which Martha paid $6,274.23, permitted Martha to retain and perfect her interest in the estate. See and compare Ruoff v. Commissioner, 277 F. 2d 222 (C.A. 3, 1960), reversing 30 T.C. 204 (1958). [7] The fact that Martha would have been deprived of income from the properties had the Church prevailed is immaterial since it is one step removed from the basic fact that Martha before losing the income would have first lost any interest she then had in the estate.
*117 Expenditures made in the defense of title to property, or to remove claims of others against the property, or to perfect the title to property are capital expenditures and are not deductible from gross income. Addison v. Commissioner, 177 F. 2d 521 (C.A. 8, 1949), affirming a Memorandum Opinion of this Court; James C. Coughlin, 3 T.C. 420 (1944); Porter Royalty Pool, Inc., 7 T.C. 685 (1946), affd. 165 F. 2d 933 (C.A. 6, 1948), certiorari denied 334 U.S. 833 (1948); E. W. Brown, Jr., 19 T.C. 87 (1952), affd. on this issue 215 F. 2d 697 (C.A. 5, 1954); Estate of Joseph P. Morgan, 37 T.C. 31 (1961), appeal pending (C.A. 5, February 9, 1962); Income Tax Regs., section 1.212(k). Accordingly, since the $6,274.23 paid by Martha to the Church was paid primarily to defend or perfect her interest in the estate, it is not deductible under section 212(2). Our conclusion with respect to the character of Martha's expenditure also disposes of the secondary issue. Said expenditure is a capital item and is to be added to the basis of the inherited property. James C. Coughlin, supra; *118 Bowers v. Lumpkin, 140 F. 2d 927 (C.A. 4, 1944), certiorari denied 322 U.S. 755 (1944). Decision will be entered under Rule 50. Footnotes
1. The term "Second Party" refers to the Church.↩
2. The term "First Party" refers to the Church. ↩
3. The term "Second Parties'" refers to Kenneth's other two children and Martha.↩
4. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * ↩
5. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - * * *
(2) for the management, conservation, or maintenance of property held for the production of income; * * * ↩
6. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
7. In Ruoff v. Commissioner, 277 F. 2d 222 (C.A. 3, 1960), reversing 30 T.C. 204↩ (1958), the taxpayer's income-producing property was vested in the Attorney General pursuant to an order issued under the Trading with the Enemy Act. After the war the taxpayer commenced proceedings to regain her property. The Court of Appeals after noting that a vesting order does not ipso facto confer title to the seized property in the Government, that title would not pass to the Government until the taxpayer's remedial actions under the Act had been concluded in the Government's favor or were barred by limitations and that the orgin and nature of the controversy between the Government and the taxpayer revolved around the issue of whether taxpayer was an enemy national under the Act and not whether taxpayer had title to the property or was seeking to perfect her title, held that the expenses incurred by taxpayer in connection with the litigation were consequently expenses incurred for the purpose of conserving her basic interest in the property and as such were deductible.